Hopkinson v. Jones.

---

## MARY HOPKINSON

### v.

## J. BLACKBURN JONES.

28    409
97    4483

*Attorney and Client—Fees—Account Stated—Continuance—Evidence—Instructions.*

1. The admission by a party against whom an affidavit for a continuance is made, that the absent witness will swear to the material facts therein stated, will not warrant the court in overruling the motion for a continuance, when it appears that the presence of the witness is necessary to a fair trial.

2. Where an answer of a witness is but a mere conclusion and is not responsive to the question, it should be stricken out.

3. Business transactions between an attorney and client may be investigated in a controversy between them, and the burden of proof is upon the former to show the justice of his demands.

4. A statement of account between attorney and client is not conclusive upon the client.

5. Upon a suit brought by an attorney for the recovery of fees, instructions which, ignoring the relation of attorney and client, inform the jury that an account stated is final, are erroneous.

[Opinion filed December 8, 1888.]

Appeal from the Circuit Court of Kane County; the Hon. Isaac G. Wilson, Judge, presiding.

Messrs. Botsford & Wayne, for appellant.

Messrs. D. B. Sherwood and Oscar Jones, for appellee.

C. B. Smith, J. This was an action in assumpsit brought by J. Blackburn Jones, appellee, against Mary Hopkinson, appellant, in the Kane county Circuit Court, to the October term, 1886, and was tried at the October term, 1887.

The declaration contains three counts. The first one declares for services rendered as an attorney; the second on an account stated between the parties for $3,038.59, and alleges further that, in consideration of the speedy payment, plaintiff would accept $2,888.59 in full settlement, provided said last sum was paid in sixty days from November 17, 1885, and that defendant neglected so to pay, and plaintiff therefore claims the full amount of $3,038.59 with interest from November 17, 1885. The third count seems to be the consolidated common counts. No evidence was offered under either the first or third counts. The trial was had under the second count.

The defendant pleaded the general issue and a plea of set-off. Appellee is a lawyer living and practicing law in the city of Chicago. Appellant is the widow of Charles Hopkinson and lives in Kane county, Illinois. Charles Hopkinson in his lifetime had been one of the bondsmen of Postmaster McArthur, of the city of Chicago, who, after McArthur's default, was sued on his bond with the other sureties.

This suit was pending, but untried, at the time of Hopkinson's death, and the suit was abated as to him. Appellee had been of counsel for Hopkinson in his lifetime. Mr. and Mrs. Hopkinson had no children of their own, but they had adopted and raised a little girl named Lilly, up to womanhood, and she had taken their name. This girl grew to be a young woman and after Mr. Hopkinson's death, this adopted daughter was the constant companion of appellant, and did all her writing, and was with her in all her business transactions, and advised with her and was, indeed, her adopted mother's secretary, and was fully cognizant of all her mother's affairs. She was afterward married to a Mr. Johnson.

Just before the trial was called, appellant entered a motion for a continuance on account of the absence of this daughter, Lilly, who was sick and unable to be in court, and in support of said motion read the following affidavit made by appellant:

"That affiant can not safely proceed to the trial of said cause at the present time, on account of the absence of one Lilly Johnson, a resident of Chicago, Illinois, who is a material witness for the defense. That said witness is the adopted daughter of affiant, and was raised in her family and remained a member thereof until her marriage, about one year since; and she is the same person who is mentioned in the accompanying affidavit of Dr. Armstrong. That said witness, on August 31st, gave birth to a child, and for a time was seriously ill, but her gradual improvement has recently been checked by a relapse, which makes her appearance in court at the present time impossible. That said witness during the transactions in controversy in this case, was residing with affiant, was present at their occurrence and advising with affiant and participating in them, and is familiar therewith. That affiant has a good and meritorious defense to this action. That she expects and believes that she can prove by said witness that the sum of $5,000 mentioned in plaintiff's bill of particulars 'as fees agreed upon,' is erroneous, and that the services of plaintiff were not definitely agreed upon, but when rendered, to be paid for, for what they were reasonably worth. That, in the presence of said witness, plaintiff agreed to render said

services upon a fair and reasonable consideration. That by
said witness she will be able to prove the kind and nature of
said services, so that other witnesses may be competent to
speak of their value, and that by such proof she will be able
to show that said services rendered by the plaintiff were not
worth the one-half of $5,000. That said plaintiff on the trial
will attempt to establish an express contract, and that on
that point there will be a conflict of testimony, and an
attempt on the part of plaintiff to sustain an agreement to pay
the amount shown in said bill of particulars. That said wit-
ness was present on an occasion referred to in some depositions
taken by plaintiff when there was an attempt to make a settle-
ment of the account between plaintiff and affiant, and that after
some preliminary talk was had about said account, there sus-
piciously appeared in plaintiff's office, persons who appeared
to have dropped in as witnessess to this conversation, when
affiant forbore to make in their presence any further conver-
sation about her affairs. It is now claimed by two of these
persons that certain admissions were made by affiant which
were entered in a certain book which is to be produced as evi-
dence thereof in this case. Affiant expects and believes she
can prove by said witness that no such statements, admissions
or conversations were had or made by affiant so recorded in
said book, either in words or substance, nor was any such book
present or written in when affiant was present.

"But affiant expects and believes she can, on the contrary,
prove by said witness that on that occasion this affiant informed
plaintiff that his said bill was exorbitant; that she did not owe
the amount claimed; that such account was incorrect, and
that proper credits had not been allowed her; that affiant never
consented to or agreed to any balance thus shown. That she
expects and believes she can and will show by said witness
that on said occasion, when no persons were present except
plaintiff, defendant and said witness, this account was examined,
and that affiant claimed credit for the sum of $500, which does
not appear in said bill of particulars, and that plaintiff then
agreed that she should, on said account, have credit for that
sum.

" Affiant further states that plaintiff once had in his hands, gas stock of this affiant of the face value of $500, which he disposed of without her knowledge or consent, and that he then also offered to allow the value of same to affiant. Affiant further expects and believes she can further prove by said witness that on another occasion, at plaintiff's office, when witness was present, and after the rendering of a bill to her showing due to him about $3,000, and after all services claimed for had been rendered, then allowed and admitted credits to affiant so as to reduce said account to $2,000. Affiant further states that by way of compromise and to avoid threatened litigation she consented to pay said $2,000 and borrowed a sum of money to pay it, but plaintiff would not accept it, and refused to allow said credits, and that this was the only agreement or compromise made by affiant when said witness was present.

" Affiant further says that should plaintiff be a witness in his own behalf on the trial, affiant is advised that it will be important for her to have said witness in court, in matters of rebuttal to the testimony of plaintiff, as she was present at all the agreements and material transactions between plaintiff and defendant, and that the presence of said witness in court is material and necessary to her defense on said trial.

" That on most, if not all of said facts, there will be a contrariety of evidence, and affiant knows of no other witness, except herself, by whom she can prove said facts, so within the knowledge of said witness or of any of them. That said witness is not absent by the consent of affiant, but if the case be continued for the term she believes she can secure her attendance at the next term of this court, and that this continuance is not for delay."

Affidavit of John B. Armstrong, states on oath, that he is a practicing physician of the city of Chicago, and the family physician of Mrs. Johnson; that on the 31st day of August last, she, after serious labor, gave birth to a child; that for a month she was confined to her bed; that she is now suffering from threatened abscess of the breast, rendering her absolutely unfit to attend court, or to be subjected to any physical or

mental excitement for six weeks to come; that he attended her through her confinement, and that she is now under his treatment.

The court held these affidavits sufficient to entitle the defendant to a continuance, and thereupon plaintiff elected to admit the affidavit, and the court then overruled the motion for continuance and required the defendant to go to trial, against her objection, to which ruling of the court she excepted. A trial was then had resulting in a verdict for the plaintiff for $3,216.86.

The court overruled a motion by defendant for a new trial and rendered judgment on the verdict for the plaintiff. The defendant prayed an appeal and brings the record here for review, and assigns numerous errors committed against her on the trial.

The first error complained of is the action of the court in overruling her motion for a continuance after appellee had elected to admit the affidavit. We think this objection is well made. The affidavit which we have set out in full not only shows that Mrs. Johnson was a very important witness, but it goes further and shows that her presence at the trial was as important to a fair and just trial as was her mere testimony.

The affidavit stated her familiarity and intimate knowledge with all the business transactions and conversations had between her mother and appellee, out of which this contro_versy arose, and that she carried on the correspondence between them, and was present at the various times when plaintiff claimed that the defendant had admitted and promised to pay his claim. There can be no doubt that the presence of this witness to aid in giving her mother advice and assistance on the trial, and to meet with her testimony any new and unexpected phase of the case, was important to a fair trial.

The subsequent course and conduct of the trial fully justified the affidavit and demonstrated the necessity of Mrs. Johnson's presence. The admission by a party against whom an affidavit for a continuance is made, that the absent witness will swear to the material facts stated in the affidavit will not always warrant the court in overruling the motion for a continuance.

It sometimes occurs that the relations of the absent witness to the party desiring his evidence and attendance is such that his personal presence is as important to aid in the conduct of the trial as his evidence upon the issue involved.  And when such personal presence of the witness is fairly shown to the court by proper affidavit to be reasonably and probably necessary to a fair trial and to prevent surprises, then, and in such cases the motion ought not to be overruled because the party may admit the affidavit.

The case before us we think fairly illustrates the necessity and propriety of such rule.  The facts to justify such a departure from the usual course, must rest in the sound legal discretion of the court, subject to review, however, for abuse of discretion.

It appears from the evidence that the claim of appellee is not for any services rendered appellant's husband during his lifetime, but was wholly for services rendered appellant in the settlement of her husband's estate.  She testifies that prior to her husband's death she knew but little of appellee, and had not much acquaintance with him, and that after her husband's death she received a telegram from appellee, and that in response she went to Chicago to see him, and that he was anxious to do her business, and that she gave it to him.  This seems to have been the beginning of the relation of client and attorney between the parties, and it was begun at the solicitation of appellee.  The evidence in this record discloses the fact that Mrs. Hopkinson was a woman little acquainted with business affairs and methods, and was largely dependent upon her attorney and her adopted daughter for advice and direction in her business affairs.  The relationship of client and attorney covered a period of something near three years and was terminated in 1886, if not before, by the commencement of this suit.

During the progress of this employment and before the estate was settled up the plaintiff presented defendant with a bill for services amounting to something over $3,000 and the defendant offered to prove that he first proposed a lump charge of $5,000 which he, in fact, had in his account, but the

court refused to allow the proof. The testimony in the case does not disclose what services the plaintiff rendered the defendant for which he demanded this large sum of money. The plaintiff rested his case on proof of an account stated without attempting to show what services he had rendered, nor what such services were worth.

The plaintiff claims that the settlement was made between himself and defendant, and the account stated at his office in Chicago on the 17th day of November, 1885, and that the amount then agreed upon as due plaintiff was $3,038.59.

The plaintiff swears she promised to pay this amount, a part at a time. He had rendered her the bill in 1884, which she had kept ten months without paying any attention to it. Shortly before this alleged settlement was made plaintiff swears that he wrote her that he wanted a settlement; it was about time to close the estate in the County Court; that she had given notice to settle the estate on the 19th day of November, and that, unless the account was settled, he would do nothing further in the estate, in her business.

In response to this letter he swears that she and Lilly came to his office November 17th, and said she had come to settle the account. It appears that plaintiff's office forms a sort of central room and doors lead from it into some two or three other offices occupied by other attorneys who had intimate personal and business relations with plaintiff. They each had a private office opening into this common or central room. Henry T. Steele occupied one room. Robert McCurdy another. Henry M. Price occupied another of these rooms, all opening into plaintiff's office.

After defendant and her daughter, Lilly, had been in the office a short time talking about the settlement on the 17th day of November, and after they had discussed different items of the account plaintiff himself says: " I am going to have a witness here and will speak to Steele, and have him come in, so he may know what is said and done. Lilly said she spoke to McCurdy to come in. I then told Steele we had some difficulty, but had struck a balance of $3,038.59. She says she will be satisfied if I will allow her $150. I agreed to that and

Hopkinson v. Jones.

the amount will be that much less. She then said, 'What will you do if I can raise $2,000 right away?' I said, 'If you will raise it by January 1st, I will receipt the bill with pleasure..' I then wrote what appears in the bill to that effect. She said she was satisfied with the bill, and after that our business relations continued, and she consulted me on business matters of her own."

Henry T. Steele testified for plaintiff, that the plaintiff called him for a witness and that he was requested to take notice of what was said and done; that he was shown some figures that appear at the bottom of an exhibit, and that while plaintiff was admitting the $3,038.59, she was also insisting there must be a deduction of $150. " No balance mentioned or struck." " I took the amount in price and date and put it down in diary or journal." " I don't remember that defendant made any reply."

On cross-examination this witness swears he was formerly a partner of appellee's, and that appellee has most of his chancery cases referred to him; that he can't call to mind the conversation between the parties at the time. Only put down " Mrs. Hopkinson, in General Jones' office, says, owes $3,038.69, less $150, and if paid before January 1st, $2,000 to be accepted."

" Probably defendant did not say what I have written; can not give her words. It was written in my office. I wrote it after I left plaintiff's office."

Robert McCurdy testifies that on November 17, 1885, he and plaintiff both had private offices opening in the same general room, and that he was present at what purported to be a settlement between plaintiff and defendant. Plaintiff said there had been some dispute about the account, but he had now agreed on the amount due.

The amount was then stated by the plaintiff a little over $3,000. Defendant claimed a credit of $150 and plaintiff said he was willing to allow it. Can't state substance of anything the defendant said. Plaintiff said if $2,000 was paid by the holidays, then he was to accept that amount. Defendant made no answer to that proposition.

On cross-examination this witness says, at one time he had desk room in plaintiff's office, and had more or less interest in his business matters. At the time of this meeting Steele was in plaintiff's office, and plaintiff said he wanted us to be witnesses to the conversation that took place. The account had been agreed upon when I came in. I do not remember any particular words the defendant said; can't state anything she said in words. McCurdy further swears that Steele made his memoranda in his book in plaintiff's office, near the east window, and that he looked over Steele's shoulder to see that he made a proper memoranda. McCurdy further swears that on that occasion the defendant was somewhat agitated—don't recollect whether she was weeping or not. He further said on cross-examination, " I can't give the language used. I can't give the substance of what either party said." The testimony of the plaintiff and these two witnesses, Steele and McCurdy, is all there was offered by plaintiff as to what took place at the time he claims the account was stated.

There were two or three witnesses testifying to the defendant going to plaintiff's office on other occasions with an abstract, and saying she was going to borrow money to pay plaintiff.

The defendant testified that she lived on a farm near Elgin. "Am widow of Charles Hopkinson. After my husband's death I got a telegram from plaintiff, and went to Chicago to see him. He was anxious to do our business, and I gave it to him. He afterward sent me a bill, and I and Lilly went to his office. Saw Steele and McCurdy there. No one but plaintiff was there when we got there. He said he wanted his pay and would not close up the estate unless I gave him a note or something to secure his pay.

" There was considerable said between us; I can not recollect; I was very indignant, but I told him I would pay him every cent I owed him. I was much agitated and can not remember all. I objected to his bill all the way through; that it was too large. I wanted to get the matter settled. The substance of the conversation was, that he would do no more until he got his money. He then called these gentlemen into

the room and I said no more.    After they came in I said, ' I
will pay you every cent I owe you,' and then went out of the
room.    I was crying at the time, and was begging him to
close up the estate and he would get his money.

"There was then no memoranda written in Steele's book,
and no such conversation as .shown in Steele's book.    Mrs.
Johnson (Lilly) was with me.    The parties that plaintiff called
in were there when I left.    I never spoke to them.    We
never spoke about calling them in."

The affidavit of Mrs. Johnson (Lilly) was then read in evi-
dence on behalf of the defendant.    She stated that she was at
the plaintiff's office with the defendant when a settlement was
attempted, and that after some preliminary talk had been had
between plaintiff and defendant about the account, certain
persons surreptitiously appeared there who seemed to have
come in as listeners to the conversation, and the defendant
then forebore to make further conversation about her affairs,
in their presence; that no such statements or admissions were
made as stated in Steele's and McCurdy's depositions or re-
corded in a book, nor any memoranda made in her presence,
and no such agreement as claimed was made; but the defend-
ant then claimed the account was incorrect and did not con-
firm it.

The foregoing is all the material testimony in support of
and against the settlement and account stated.    The plaintiff
and both his witnesses, McCurdy and Steele, swear that
neither Steele nor McCurdy was in plaintiff's office when the
discussion and dispute about the account began.

McCurdy says the settlement was made before he got in;
Steele says substantially the same, and they both swear to
what the *plaintiff repeated over after they got there*, as to
what the agreement was, and while there is an attempt on
their part to swear the defendant into acquiescence to what
the *plaintiff* said about the settlement and its terms, they
both utterly fail on cross-examination to repeat a single sen-
tence or even the substance of anything the defendant said on
that occasion, but give their conclusions against the objections
of defendant.    These witnesses do not agree with each other
as to what occurred on that occasion.

McCurdy swears Steele made his memoranda in his book in plaintiff's office at the window and that he stood by him and looked over his shoulder to see if he got it right. Steele says he did not make the memoranda there but made it in his own office after the parties had all gone. The conduct of the plaintiff in calling these lawyers from side rooms to be witnesses for him against this woman, his own client, in an attempted settlement, while the relation of client and attorney still existed, is open to severe and just criticism and can not meet with our approval. Nor does the conduct of these two witnesses stand in any better light in their readiness to be witnesses against this woman under the circumstances. They knew she was his client, and they knew, or ought to have known, that his professional obligation to her was violated by the methods then adopted. If she was consenting and agreeing to the alleged settlement and approving the plaintiff's account it would have been quite as easy to have her indorse such approval on the bill and sign it as to call in these lawyers to witness it, and have them write it in a book. Inasmuch as the plaintiff declined to open up his dealings with his client by a proper declaration for that purpose, but chose to risk his case on an account stated, the burden of the proof was on him to show by a fair and clear preponderance of the evidence that such an account had been fairly and justly stated. We think the proof fails to establish that fact, under all the circumstances of the case, and that the verdict was therefore against the evidence.

The defendant also insists the court erred in the admission and rejection of testimony. We think the court erred in several instances in permitting witnesses, McCurdy and Steele, to state their conclusions instead of requiring them to state what was said.

Witness McCurdy was asked this question: "State whether or not defendant assented to the balance found due on that occasion, and if so in what way."

Ans. "She did assent. I can not tell now from recollection whether it was by a nod of the head or by words but I know she assented." Defendant objected to this answer and

moved to have it stricken out, which was refused by the court. The answer is but the conclusion of the witness and should not have gone to the jury. The question and answer were vital and important. Her assent could only be manifested by saying or doing something and the witness should have been required to say what she did or what she said.

Again McCurdy was asked: "Have you now stated all you can recollect she said on that occasion?"

Ans. "There was some conversation as to a compromise of this amount, as I understood it, before the then ensuing holidays, in which it was agreed that if $2,000 was paid in cash before the holidays that should close the account." The defendant objected to this answer and moved to have it stricken out, but the court overruled the motion. This was error. The statement that the parties *agreed* to a settlement is a conclusion, and should not have been allowed. Again he was asked: "What did she say on that subject?" Ans. "She agreed to what the General said about the amount that was due, a little over $3,000." The defendant objected to this answer and was overruled. The answer was but a conclusion and not responsive to the question, and ought to have been stricken out.

The witness Steele was asked the question: "Who called you in?" In addition to answering the question, he goes on at considerable length and tells what occurred in the office between the parties after he got in. In this answer he also states conclusions of what was said and done. The defendant objected to all the answer not responsive to the question, and asked to have it stricken out, but the court refused to do it. In this the court erred. Without noticing numerous other objections of this same class appearing in the record, where improper answers of witnesses were allowed to go to the jury against the defendant and against her objections, we will notice the error assigned in the refusal of the court to admit proper testimony offered by the defendant. The original account filed by the plaintiff, contained a "lump" charge of $5,000 as an agreed fee.

On the trial of the case, plaintiff and his witnesses have testified to what occurred, and what defendant said on the occa-

sion of the alleged settlement in November at plaintiff's office.

When the defendant was on the witness stand testifying, and giving her version of what was said and done at the same time and place, she was asked this question: "Can you mention some of the facts in reference to the charges? do you remember the fact that there was anything said about a lump charge of $5,000?"

The plaintiff objected, and the court sustained the objection. We are wholly unable to understand why this objection should have been sustained. It was competent and proper for several reasons, and it should have been allowed.

It was seriously prejudicial to the defendant to cut off the plaintiff's explanation for making a $5,000 charge without an item being stated, and then to offer to take $3,038.59, and then still further to offer to "cheerfully" receipt his bill for $2,000, if paid by the 1st of January.

The question asked of the defendant opened up a branch of the case which she was refused the right to investigate, and that was as to the right of the defendant to go back of the alleged settlement and statement of the account (even conceding that such settlement and statement had been made), and look into the fairness and reasonableness of the charges made as they grew out of the original transaction. The court in the admission and rejection of the evidence as well as in the instructions given and refused, seems to have proceeded on the theory that a statement of account made between attorney and client, was conclusive upon the client. This may be the rule as among strangers where no relation of confidence or trust exists, and where neither has a right to look upon the other for protection against fraud or oppression, or undue advantage. But this rule, if it ever had any existence as between persons holding confidential, trust or dependent relations toward each other, seems to have been relaxed as to them.

The defendant interposed the general issue, which was a denial of the whole of plaintiff's claim, and put him upon its proof, and then filed a plea of set-off, which would entitle her to recover anything she could prove herself entitled to.

Hopkinson v. Jones.

The case of Gruby v. Smith, 13 Ill. App. 43, seems to be in point, and is a case in many respects like the one at bar. The opinion of the court was delivered by that learned jurist, Judge McAllister. The suit in that case was brought by Smith, as attorney at law, before a justice, against Gruby, a tailor, to recover for legal services. Before the justice the plaintiff sought to recover on a *quantum meruit* theory. On appeal to the Circuit Court he changed his ground and sought to, and did, recover solely on the ground of an alleged account stated. In the opinion of the court Judge McAllister says: " It may be gathered from the record that the defendant sought to go into an investigation of the merits of some of the items charged by the plaintiff, but, on objection by the plaintiff, the evidence was excluded. Some of the items in plaintiff's account, which was in evidence, seem to us to be excessive and extortionate, and we think great injustice has been done the defendant by the verdict and judgment." In speaking of the failure of the plaintiff to make out his case by a preponderance of the evidence, the court further says that " the fact that nothing of the kind (an account stated) was pretended on the trial before the justice, which occurred but a few days after the alleged accounting, and the not giving any testimony of it there, but springing it on the defendant for the first time on the trial in the Circuit Court, the circumstances under which it took place, the way the witnesses happen to be conveniently present, and the manner in which they testify, all conspire to show this to have been an adroit device on the part of this attorney to collect of his client an excessive and extortionate bill."

" The fact that the relation of attorney and client subsisted between the parties at the time of this alleged assent to a grossly exorbitant bill, and promise to pay such balance, should have had an important if not controlling effect upon the question whether any such assent and promise were voluntarily given or made on the part of the defendant, and upon the point of permitting an investigation by him into the merits of the several items of the bill. But it seems that relation was entirely ignored."

In that case this instruction was given: "The jury are in-structed that in an action upon an account stated, the original form or evidence of the debt is immaterial, for the stating of the account changes the character of the cause of action and is in the nature of a new undertaking. The action is founded, not upon the original contract, but upon the promise to pay the balance ascertained; if the jury find from the evidence that there were accounts rendered by both parties to this suit, the one to the other, and a balance agreed upon in favor of the plaintiff, and a promise made by the defendant to pay the balance, then you must find for the plaintiff not exceeding the amount so agreed upon and promised."

This instruction was held wrong and misleading: *first*, because it ingeniously told the jury that the original merits or extortionate character of plaintiff's charges were entirely im-material, and that such account was absolutely conclusive; and *secondly*, because, while purporting to give the jury all the elements necessary to a recovery, it wholly omits any refer-ence to the relation of attorney and client, and whether the defendant was fully and fairly informed in respect to material facts. The parties not dealing upon a footing of equality, those matters should have been embraced. This case is in all material respects, in fact and law, like the one at bar. And the same rule was held in Dickinson v. Bradford, 59 Ala. 581.

In that case the court use this language: "If they (attor-neys) assume the relation and enter upon the duties, thereby inviting confidence and acquiring influence without stipulating the means of compensation, no subsequent agreement with the client can be supported unless it is satisfactorily shown that the compensation does not exceed a fair and just remu-neration for the services which have been, and which it is, the duty of the attorney to render."

Again in Jennings v. McConnell, 17 Ill. 148, the Supreme Court, Scates, C. J., use this language: "In the relation of client and attorney or solicitor, there is that confidence reposed in the latter which gives rise to very strong influences over the actions, rights and interest of the former. Hence the law with a wise providence not only watches over all the

transactions of parties in this relation, but often interposes to declare transactions void, which between other persons would be good. And this is applicable to contracts and gifts generally, while the confidential relation continues, and is not confined to any particular property about which the attorney may have been employed. It is not required that the client should establish fraud or imposition; the *onus* of proof, upon showing the relation when the contract or gift was made, is upon the attorney to show fairness, adequacy and equity, and upon failure to make such proof, courts of equity treat the case as one of constructive fraud. The highest degree of good faith and fairness is expected and exacted."

This and the two preceding cases both go the full extent of holding that the business transactions between an attorney and client may be investigated in a controversy between them; but they go farther, and hold that the burden of proof is on the attorney to show the justice and fairness of his demands.

Under the authority of the cases above cited we think the defendant had the right, on the trial, to go back of the alleged settlement and investigate the character and justice of the plaintiff's original charges for all services rendered under his employment and during the existence of the time covered by the relation of client and attorney, and show if she could, that they were exorbitant and unjust. No mere trick or device of pleading can deprive her of this right. If this large sum of money was honestly earned and justly due the plaintiff, he ought not obstruct the way to the fullest and fairest investigation of his dealings with his client.

We think the circumstances surrounding this transaction, from beginning to end, justify the wisdom of this rule. The defendant was a woman deprived of the assistance and counsel of her husband. The plaintiff had done or pretended to do some business for him in his lifetime. On the death of the husband, the plaintiff sought out the defendant, and was employed at his own request. After his bill had reached from $3,000 to $5,000, the business is not yet done, and he presents a $5,000 lump charge. and demands payment or settlement, and notifies her that he will do nothing more with her business, nor proceed

with it until his bill is settled.   Already had the estate dragged more than a year beyond the legal period for settlement. The defendant is urging him to finish the work he was employed to do, and tells him when that is done she will pay him every cent she owes him.

Under these circumstances she was peculiarly in his power. She had already paid him a good deal of money.   He understood all about her business, and he knew her necessity for the services of an attorney until her work was finished.   It was utterly impracticable at that stage of the business, for her to discharge him and employ other counsel.   He knew this and she knew it.   He calls a halt to compel compliance with his demands knowing the advantage of his position and the necessities of his client.   We think a settlement obtained under such circumstances between attorney and client entitled to but very little weight, and that the burden rests on the plaintiff to show its correctness and fairness.

Again the defendant assigns for error the giving of plaintiff's instructions.   The question involved in this assignment of error has already been considered in connection with the refusal of the court to allow the defendant to answer the question propounded to her.   Under the rule laid down in Gruby v. Smith, *supra*, the instructions given for plaintiff were all erroneous.

First, because the legal effect of them was to tell the jury that the supposed statement of account was final and conclusive against the defendant.

Second, because all of the instructions ignored the relation of client and attorney, and did not correctly state the law as between client and attorney, as held in the cases above cited, and which we hold to be the law governing this case.

Lastly, the defendant assigns for error that the court erred in refusing to give her second and third instructions.   We think the second instruction ought to have been given.   It was asked under the defendant's theory of the case, and under that theory it was correctly drawn.   There was evidence in the record tending to support it.   The last instruction was properly refused.   It did not state a correct principle of law.

Upon the whole record we are satisfied that the defendant has not had a fair and impartial trial in conformity with the law, and for the errors herein stated the judgment is reversed and cause remanded.

*Reversed and remanded.*