### George S. Poppers v. Frank Schoenfeld.

1. Account Stated—*Only Prima Facie Evidence of its Correctness.* —An account stated is only *prima facie* evidence of its correctness.

Assumpsit, for attorney's services. Appeal from the Superior Court of Cook County; the Hon. Jesse Holdom, Judge, presiding. Heard in this court at the October term, 1900. Reversed and remanded. Opinion filed October 10, 1901.

Statement.—This is an appeal from a judgment against appellant in favor of appellee, for services by the latter as an attorney at law. The suit was commenced December 27, 1899. The declaration is in assumpsit and contains a count for services as an attorney at law and solicitor in chancery, the common money counts, a count for labor, services and material, and a count on an account stated.

The plaintiff, appellee here, testified that from July 21, 1897, to and including November 28, 1899, he represented appellant in a number of cases, and, as his counsel, did certain work in the cases, and that, July 1, 1899, and November 29, 1899, he rendered to appellant accounts; that July 1, 1899, he sent appellant an account up to that date, and November 29, 1899, he sent the whole account up to the last date, in a letter of that date, which last account included the one sent July 1st. The accounts were put in evidence. They include very numerous items, and the balance appearing from the accounts to be due is $737, the amount for which judgment was rendered. Appellee

also put in evidence the following letters from him to the
appellant:

"CHICAGO, Aug. 30th, 1899.

MR. GEORGE S. POPPERS, City.

DEAR SIR: You said you would be able to send me a
check for balance of my account by Thursday of this week.
I trust you will not disappoint me in this.

Respectfully yours,

F. SCHOENFELD."

"CHICAGO, Oct. 18th, 1899.

MR. GEORGE S. POPPERS, 92 West Madison St., City.

DEAR SIR: You were to settle up the balance of my
account two weeks ago without fail. Last week you were
sure to adjust it. I can not understand what you mean by
your neglect in this regard. Do you think you can come
to my office and take my time from other people and let
me wait for your own convenience to make compensation
for it? I must again insist that you give this matter your
immediate attention, as there is certainly no excuse for
this delay. I remain,

Very truly yours,

F. SCHOENFELD."

"CHICAGO, Nov. 29th, 1899.

MR. GEORGE S. POPPERS, 92 West Madison St., City.

DEAR SIR: Herewith find enclosed two bills showing a
balance due me amounting to $737.00. One of the bills is
from July 21st, 1897, to June 30th, 1899, and amounts to
$543.00; the other bill is from July 1st, 1899, until November
28th, 1899, and showing a cash credit of $100.00, leaving
the balance as above stated. You have been heretofore
advised and a number of statements were handed you for
this account upon which you made partial payment. I
would not like to institute suit against you to recover this
money, but if you continue to ignore this matter I shall be
compelled to prosecute a suit to recover the same. Trusting
you will give this matter your immediate attention, I
remain,

Respectfully yours,

F. SCHOENFELD."

"CHICAGO, Dec. 18th, 1899.

MR. GEORGE S. POPPERS, 92 West Madison St., City.

DEAR SIR: Some time ago I sent you an itemized state-
ment of your account, showing a balance due of $837.00,

upon which you paid $100.00, leaving $737.00 still due and unpaid. I do not understand why you do not give this matter your attention, and seem to ignore my statement entirely. I must again, therefore, call your attention to it and insist upon receiving a check from you for the amount by early mail. If I do not hear from you by Wednesday of this week, I shall be compelled to institute suit against you to recover this balance still due me.

Trusting you will give this matter your immediate attention, I remain,

Truly yours,

FRANK SCHOENFELD."

Appellee also testified that he did not believe that he ever had a talk with appellant about the account; that on the statement or account of July 1, 1899, appellant paid him $100; that appellant said to him a number of times that he was a little short of money, but he would fix up the account; that he, appellee, had received no response to his letters, and that the balance of the account was due and unpaid.

The foregoing was substantially appellee's evidence in chief. He was the only witness in his own behalf. At the close of his examination in chief the court remarked: "I presume you are proceeding on the theory of an account stated?" to which appellee's counsel responded, "Yes."

On appellee's cross-examination he testified that he had an arrangement with appellant as to the rate of charges for attending to his business; that he was to receive $25 for each day's attendance in court, and that if a day's services were rendered on a motion he charged the regular rate per day. The following question was asked and answer made:

Q. "The first item in this bill is July 21, 1897, for one-half day in the Kennedy case?" A. "There were two Kennedy cases, one against Poppers and one in which he brought a replevin suit as plaintiff. I presume it was a half day; that is the memorandum I have in the book. One of those cases was originally instituted in this court and the other case before a justice of the peace."

Counsel for appellee then asked the following question: "Did you appear in the case brought before the justice?"

The question was objected to and the court sustained the objection. Counsel for appellant insisted on his right to cross-examine appellee as to each item of the account, when the following colloquy occurred between the court and appellant's counsel:

Mr. Hunt: "Does your honor rule that I have no right to cross-examine him in regard to these items?"

The Court: "Yes, I do; the question here is whether there has been an account stated."

Mr. Hunt: "I desire to call your honor's attention to another fact; the two special counts in this case are for particular services rendered and a special liability declared upon. The plea is the general issue."

The Court: "Do you withdraw those special pleas?"

Mr. Peterson: "Yes, we will withdraw the special counts."

Mr. Hunt: "I understand he can not withdraw the special counts at this time without depriving us of the right of cross-examination."

The Court: "Let the record show that the plaintiff now withdraws the special counts."

The court adhered to the ruling that appellant's counsel had no right to examine appellee in regard to the items of the account. It does not appear from the record that any count of the declaration was withdrawn.

Appellee further testified, on cross-examination, that in a conversation, after appellee rendered the account of July 1, 1899, appellant claimed that some charge in the account was too high; that he, appellee, did not know what he referred to, but that appellant, at the same time, told him that he would have some money for him in a few days, and said, "I will fix up your account, Mr. Schoenfeld;" that appellant did not object to the number of specific items in the account, but said he did not have the amount with him; that witness does not think appellant spoke of the account that had been rendered. He simply said he had received the statement, and had not the money. He said as soon as he would be able to get some money matters fixed up, he would pay the balance due. Immediately succeeding the foregoing evidence, the following occurred:

Q. "Did he acknowledge that the balance due, as stated by you in your account, was correct?" A. "I don't believe that he referred to the balance or referred to anything. He just told me he would fix up my account."

Subsequently, in cross-examination, appellee testified: "At a further conversation we had, he promised to pay me the balance due."

Appellant testified that shortly after July 1, 1899, when the first account was rendered to him, he told appellee that it was not correct, when appellee said he was hard up for money, and asked him, appellant, if he could spare him $100, and that he, appellant, said, "Yes, I don't owe you that; simmer it down; the list of items is too high. He says, ' You ought to be good for $100.' I says, 'All right; here is $100 for you;' but, I says, ' I would like to have this bill fixed up.' He says, ' I have got no time just now; come in some other time.' I brought this bill four times to have it corrected." Appellant further testified that he pointed out to appellee items in the account which he, appellant, claimed to be incorrect, and that appellee told him that he had no time to settle the business; to come another time; and that he, appellant, went to appellee in respect to the matter three or four times, but appellee would not listen to him. Witness also testified that he never agreed to pay appellee the balance shown on total account rendered November 29, 1899.

The court gave to the jury this instruction:

" The court instructs the jury as a matter of law that where an itemized statement of account is by the creditor delivered to the debtor, showing the aggregate charges in the creditor's favor and the proper credits thereon, and the debtor retains said statement of account and makes payment upon it without objection, it thereby becomes an account stated between the parties."

George Hunt, attorney for appellant.

Zach. Hofheimer, attorney for appellee.

Mr. Justice Adams delivered the opinion of the court.
It is apparent from the preceding statement, the theory

of the trial court was that in a suit by an attorney at law against his client, to recover compensation for professional services performed by the former for the latter, proof of an account stated is conclusive as against the client. Hence the court ruled that appellee could not be examined as to the items of his account.

Gruby v. Smith, 13 Ill. App. 43, was a suit by the appellee, an attorney at law, against the appellant, for professional services. The court intructed the jury thus:

"The jury are instructed that in an action upon an account stated, the original form of evidence of the debt is unimportant, for the stating of the account changes the character of the cause of action, and it is in the nature of a new undertaking. The action is founded, not upon the original contract, but upon the promise to pay the balance ascertained. If the jury find from the evidence that there were accounts rendered by both parties to this suit, the one to the other, and a balance agreed upon in favor of the plaintiff, and a promise made by the defendant to pay that balance, then you must find for the plaintiff, not exceeding the amount so agreed upon and promised."

Of this instruction the court, McAllister, J., delivering the opinion, say:

"Under the peculiar circumstances of the case, that instruction was wrong and misleading, first, because, by the argument ingeniously embodied in it by the counsel who drew it, and inadvertently overlooked by the court, the jury would be drawn to the conclusion that an account stated was something which rendered the original merits or extortionate character of the plaintiff's charges entirely immaterial, and that such account stated was absolutely conclusive upon the defendant. Such was the rule in the early days of the common law. In Truman v. Hurst, 1 Term 42, Lord Mansfield said: 'What is an account stated? It is an agreement by both parties, that all the articles are true. This was formerly conclusive; but a greater latitude has of late prevailed in order to remedy the error which may have crept into the account in surcharging the items.' It is only *prima facie* evidence of the correctness of the account. Perkins v. Hart, 11 Wheat. 237. 'It is not material when the admission was made, whether before or after action brought, if it be proved that a debt existed before suit, to which the conversation related. But when-

soever such admission was made, it is not now held to be conclusive, but any errors may be shown and corrected under the general issue.' 2 Greenleaf on Ev., Sec. 128, and authorities in notes. The instruction was erroneous, secondly, because, while purporting to give to the jury all the elements necessary to a recovery, it wholly omits any reference to the relation of attorney and client, and whether the defendant was fully and fairly informed in respect to material facts. The parties not dealing upon a footing of equality, those matters should have been embraced."

Hopkinson v. Jones, 28 Ill. App. 409, was a like suit. The plaintiff, Jones, "rested his case on proof of an account stated, without attempting to show what services he had rendered, nor what such services were worth." Ib. 416. The defendant, while testifying in her own behalf, was asked: "Can you mention some of the facts in reference to the charges? Do you remember the fact that there was anything said about a lump charge of $5,000?" Ib. 422. The question being objected to, the trial court ruled against it. The Appellate Court held the ruling error, saying:

"The question asked of the defendant opened up a branch of the case which she was refused the right to investigate, and that was as to the right of the defendant to go back of the alleged settlement and statement of the account (even conceding that such settlement and statement had been made), and look into the fairness and reasonableness of the charges made as they grew out of the original transaction. The court in the admission and rejection of the evidence, as well as in the instructions given and refused, seems to have proceeded on the theory that a statement of account made between attorney and client, was conclusive upon the client. This may be the rule as among strangers where no relation of confidence or trust exists, and where neither has a right to look upon the other for protection against fraud or oppression, or undue advantage. But this rule, if it ever had any existence as between persons holding confidential trust or dependent relations toward each other, seems to have been relaxed as to them."

Coffee v. Williams, 103 Cal. 550, was an action by a partner against his copartner, on what the plaintiff claimed to be an account stated. A number of questions were asked the witnesses for the defendant, in regard to items

of the account, to which objections were sustained. The Supreme Court held the ruling error, saying :

" The foregoing questions, and many others of a similar kind, should have been allowed. It would certainly be difficult to believe that the defendant acquiesced in the alleged account stated and promised to pay the alleged balance, if the things which he sought to prove are true."

In Gruby v. Smith, *supra*, the court say of an account stated, " It is only *prima facie* evidence of the correctness of the account," citing Perkins v. Hart, 11 Wheat. 237.

We are of opinion that the ruling of the court against examination in regard to the items of the account in evidence, was error, prejudicial to appellant.

During his address Mr. Peterson, counsel for the plaintiff, made the following statement :

" This man Poppers has had a great deal of litigation. He is well known here. He has lived in Chicago for thirty years."

Mr. Hunt : " I object to the remark and ask that it be stricken out."

The Court : " No, he is well known."

Mr. Hunt : " Can he infer from that that he has had a great deal of litigation ? "

The Court : " No."

Mr. Hunt : " That is what I object to."

The Court : " They will assume that he has had a great deal of litigation by looking at these statements."

Mr. Hunt : " I object to the ruling and the language of the court in ruling on the motion."

To which ruling of the court defendant, by his counsel, then and there duly excepted.

Mr. Peterson, continuing his address to the jury, said :

" He is in the furniture installment business. He is a pawnbroker and has been for years. He claims he has not been in the pawnbroking business for the last eighteen years."

Mr. Hunt : " I object to the statement and ask that it be stricken out."

The Court : " You had better not, because the time is up."

To which ruling of the court defendant, by his counsel, then and there duly excepted.

While we do not hold the remarks of counsel for appellee and of the court above quoted reversible error, we think them objectionable. The fact that a party has had a great deal of litigation, if true, or the fact that he has been a pawnbroker, should not operate against him in the cause on trial. He is as much entitled to a fair trial as if he had never been a party to a suit before and had never been a pawnbroker. The remark of the court in the presence of the jury, "They will assume that he has had a great deal of litigation by looking at these statements," was improper. It assumes that the statements in the account in evidence are true, and, in effect, tells the jury to assume from such statements that appellant had had a great deal of litigation. While we do not approve the instruction quoted in the preceding statement, we can not consider the giving it as ground for reversal, the giving it not being assigned as error.

For the reason that the court excluded competent evidence, the judgment will be reversed and the cause remanded.