(No. 45292.—

WILLIE H. LEWIS, Appellant, v. STRAN STEEL CORP-ORATION, Appellee and Cross Appellant.—(General American Transportation Corporation, Cross Appel-lee.)

*Opinion filed March 29, 1974.—Rehearing denied May 31, 1974.*

Philip E. Howard, of Chicago (William J. Harte and Philip Rock, of counsel), for appellant.

Vogel & Vogel, of Wilmette (L. H. Vogel, Robert Guritz, and Yates, Hunt, Goff & Quade, of counsel), for appellee and cross appellant.

Kirkland & Ellis, of Chicago (Caryl P. Bonotto and Gary M. Elden, of counsel), for cross appellee.

MR. JUSTICE GOLDENHERSH delivered the opinion of the court:

The circuit court of Cook County entered judgment upon a jury verdict in the amount of $241,000 in favor of plaintiff, Willie H. Lewis, in his action for personal injuries brought against defendant, Stran Steel Corporation, and also entered judgment, dismissing with prejudice, defendant's counterclaim against General American Transportation Corporation, hereafter General American. The appellate court reversed the judgment, remanded the cause with directions to enter judgment *n.o.v.* in favor of defendant, and found that, by reason of the reversal, defendant's counterclaim had become moot. (6 Ill. App. 3d 142.) We allowed plaintiff's petition for leave to appeal.

Plaintiff was injured while working at a plant operated by his employer, General American, in East Chicago, Indiana. While a bundle of nailable steel flooring, fabricated for defendant and sold to General American, was being transported within the plant on a fork lift, the left front wheel of the fork lift went into a hole in the floor, the bundle tilted, the sheets of flooring slid out, and one of them struck plaintiff, causing injuries which seven months later resulted in the amputation of his left leg.

Plaintiff's second amended complaint contained two counts, the first charging defendant with negligence and the other based on a theory of strict liability. The jury was instructed on both theories and returned a general verdict in plaintiff's favor. Defendant's answer to the count charging negligence admitted plaintiff's allegation of due care for his own safety and no instruction was tendered or given on contributory negligence.

Plaintiff's employer, General American, petitioned for and was granted leave to intervene in plaintiff's action, seeking reimbursement of sums paid plaintiff under the

Illinois Workmen's Compensation Act. It cannot be determined, on this record, why plaintiff's claim for workmen's compensation arising out of employment in Indiana was adjudicated by the Industrial Commission of Illinois. Defendant filed a counterclaim against General American alleging that at the time of the occurrence General American exercised exclusive control over both the premises where plaintiff was injured and over the steel flooring, that it was guilty of various acts of negligence, one or more of which was the "active primary proximate and sole" cause of plaintiff's injuries, that if defendant were held liable to plaintiff, its liability would be founded on "mere passive acts or technical liability," and praying indemnity from General American in the amount of any sum for which it might be held liable to plaintiff.

The evidence shows that for some period of time defendant had had a standing order with Clark Grave Vault Company for the fabrication of the nailable steel flooring which was used by General American in the construction of floors for railroad cars. Defendant supplied Clark with detailed drawings and specifications which, *inter alia,* specified the manner in which bundles of flooring were to be prepared for shipment. Each panel of flooring was approximately 4 feet wide, 8 feet long, and weighed 375 pounds. The bundle involved here contained 15 panels. Its overall dimensions were approximately 4 feet by 4 feet by 8 feet, and it weighed approximately 5,000 pounds. There were three 4-inch by 4-inch beams attached to the bottom of the bundle, and the specifications furnished to Clark required that three bands be applied widthwise over the top of the bundle, down the sides, and stapled to the wooden beams. The panels were bundled in this manner so that the forks of a lift truck or the chains of an overhead crane could get under the bundle. The bundles were loaded onto gondola cars by overhead cranes for shipment to General American's plant, and, upon arrival there, were unloaded, with steel cable slings on an overhead crane.

According to the specifications, Clark was to insert three ¾-inch by ¾-inch hard-wood strips as separators between the panels. The specifications did not designate a particular type of hard wood or prescribe the length of time that the wood should have been dried or seasoned prior to its use. If the bundles were to be loaded crosswise on a railroad car and would not extend above the side of the car, only the widthwise straps were required, but if they were to be loaded so as to extend above the side of the railroad car, additional steel bands were to be applied, lengthwise. The specifications required the use of steel bands 2 inches in width, with Signode steel facing and a Signode seal.

Plaintiff was employed in a building known as the Steel Erection Shop. It contained three bays, designated from north to south as the "61 foot" bay, the "31 foot" bay, and the "51 foot" bay. There were steel rails laid into the concrete floor of the "51 foot" bay, and General American's maintenance employees had chopped holes in the floor so that electrical cables could be passed under the tracks without their being cut by railroad cars. At the time of his injury plaintiff was working in the "31 foot" bay approximately 20 or 30 feet north of the tracks in the "51 foot" bay.

The bundle of flooring involved in this case was received at General American's plant within the week before plaintiff's injury. It had three steel bands widthwise but no bands lengthwise. The flooring was stored in an outside storage yard approximately two city blocks from the bay where plaintiff was working, and Richard Brosky, a fork-lift operator employed by General American, was making his third or fourth trip of the day with bundles of flooring when the incident occurred. When he first picked up the bundle, the forks of his truck were approximately 1½ feet above the ground, but while traveling in the "51 foot" bay he raised the load to approximately 4 feet above the floor in order to get it over the top of welding machines in the area. When he was approximately 30 to 40

feet from the point where the sheets were to be delivered, and moving at about one or two miles per hour, the left front wheel of the fork lift went into a hole approximately 2 or 3 inches deep and approximately a foot or a foot and a half wide. He testified that the bundle slowly "tilted or tipped," and the sheets of steel slid out, one on top of the other "like a deck of cards." One of the sheets was lying on the plaintiff. Frank Treadway, General American's safety supervisor at the time of the occurrence, testified that the steel bands on the bundle were intact and not broken, and that upon examining similar bundles in the storage area, he found the bands to be loose, some being "loose enough to put my hand in between," even though no sheets or wooden separators had been removed.

The appellate court majority, in concurring opinions, based on entirely different grounds, reversed the judgment.

Plaintiff asserts, and defendant does not dispute, that although Indiana law governs this case the essential requisites of the theories of liability, based on negligence and strict liability, are the same in both jurisdictions. As previously noted, as to the negligence count defendant admitted that plaintiff was in the exercise of due care for his own safety, and it raised no affirmative defense of assumption of risk with respect to the strict-liability count. Simply stated, as to the negligence count, it is defendant's position that there was no evidence of negligence on its part, and assuming, *arguendo,* that there was, that Brosky's negligent operation of the fork lift, and not its negligence, was the proximate cause of plaintiff's injury. As to the strict-liability count, it is defendant's contention that plaintiff failed to prove that when the product, the bundle of steel flooring, left its control, it was defective, and assuming, *arguendo,* such defect was proved, it was not the defect, but the "misuse" of the product, which caused plaintiff's injury.

It is plaintiff's contention that the evidence proved that a defect existed in the product when it left defend-

ant's control, that the defect was caused by defendant's negligence, and that a causal relationship existed between the defective product and his injuries.

The parties agree that the correctness of the appellate court's decision must be reviewed under the rule enunciated in *Pedrick v. Peoria and Eastern R.R. Co.,* 37 Ill.2d 494, that "verdicts ought to be directed and judgments *n.o.v.* entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." 37 Ill.2d 494, at 510.

Neither appellate court opinion states, nor does defendant contend, that there is insufficient evidence to support a finding that the bundle was loose when it left defendant's control, and neither appellate court opinion is based on failure to prove a defect in the product, under either the negligence or strict-liability theories. The rationale of the first appellate court opinion is that defendant was not "obliged to foresee that a consumer will drop its two and one-half ton product" and that it was unforeseeable that the wheel of a fork-lift truck would "fall into a hole" which the testimony shows was approximately 2 or 3 inches deep, thus "tilting its load and causing the panels to cascade out." We do not agree. The rule, long established in this jurisdiction is that "*** in order to render the party liable for his negligent act such act must be so related to the injury as to be the proximate cause thereof. The intervention of independent, concurrent or intervening forces will not break the causal connection if the intervention of such independent force was itself probable and foreseeable." *Wintersteen v. National Cooperage and Woodenware Co.,* 361 Ill. 95, at 104.

In *Ney v. Yellow Cab Co.,* 2 Ill.2d 74, 79, the court said:

"Where an independent agency intervenes, the solution of the problem becomes aggravated.

The rules are without substantial contradiction and are universally applicable, but their practical application yields varying and contradictory results. In *Neering v. Illinois Central Railroad Co.,* 383 Ill. 366, we stated: 'What constitutes proximate cause has been defined in numerous decisions, and there is practically no difference of opinion as to what the rule is. The injury must be the natural and probable result of the negligent act or omission and be of such a character as an ordinarily prudent person ought to have foreseen as likely to occur as a result of the negligence, although it is not essential that the person charged with negligence should have foreseen the precise injury which resulted from his act.' In *Johnston v. City of East Moline,* 405 Ill. 460, we declared: 'An intervening and efficient cause is a new and independent force which breaks the causal connection between the original wrong and the injury and itself becomes the direct and immediate cause of the injury. [Citations.] The intervention of independent concurrent or intervening forces will not break causal connection if the intervention of such forces was, itself, probable or foreseeable. [Citations.] ' "

Defendant, as the manufacturer of the steel flooring, is held to the degree of knowledge and skill of experts, and it was under a duty to so prepare the bundle that it could be transported to the destination where the individual sheets were to be used without exposing others to unreasonable danger. That it clearly recognized that individual sheets might become dislodged was demonstrated by the fact that the specifications furnished its fabricator required lengthwise banding if the bundles were to be loaded so as to extend above the sides of the gondola cars. The undisputed evidence shows that the bundle was prepared for shipment so that it could be, and that it was,

in fact, moved by both fork lift and overhead crane, and it was reasonably foreseeable that in handling it the bundle would be "tipped." In our opinion, it was reasonably foreseeable, in moving the bundle by fork lift or crane, that if the bundle were to become loose the individual sheets could slide out of the banding, and in order to impose liability it was not necessary that defendant foresee with precision the nature of the occurrence, or the concurrent cause of plaintiff's injury. On this record, on the negligence count, the question of reasonable foreseeability was one for the jury, and the appellate court erred in its decision.

We consider next the appellate court's decision as it applies to the strict-liability count. The rationale of the decision as stated in the first opinion is that General American's "misuse" of the product was not reasonably foreseeable, and as stated in the second opinion, that because General American was aware that the bundles were loosely strapped, and nevertheless proceeded to drive the fork lift into an area "known to contain other workmen," plaintiff had not made out a *prima facie* case that the defective condition of the product was the proximate cause of his injury. It is obvious on this record, and conceded by the parties, that plaintiff was not guilty of a "misuse" of the product and that he had not assumed any risk, so the rationale of the second opinion is valid only if General American's assumption of the risk is imputable to plaintiff, and clearly it is not, or if the "misuse" on General American's part was not reasonably foreseeable. Under *Williams v. Brown Mfg. Co.,* 45 Ill.2d 418, 425, the reasonable foreseeability of the "misuse" is measured by an objective standard, and as a practical matter the test was the same as that applicable to the negligence count. Here too, the appellate court erred and the question of "misuse" on the strict-liability count was for the jury.

Having determined that the appellate court erred in reversing the judgment and remanding the cause with

directions to enter judgment *n.o.v.*, we would, ordinarily, remand the cause to the appellate court to consider the other issues raised in the appeal. We note, however, that this case was tried in October 1967, and since the other contentions made by the parties are adequately covered in the briefs before us, we shall consider them.

Defendant contends that the circuit court erred in giving plaintiff's instruction 13, in that the instruction was lengthy, redundant, and, in its repetitive statements of the allegations in plaintiff's complaint, unduly prejudiced defendant. We have examined the instruction and find that it states, without repetition, the issues formed by the pleadings, contains no peremptory charges, and that the trial court did not err in giving it.

Defendant contends that the trial court erred in ruling on its objections to the testimony of Charles S. Walters, a member of the staff of the University of Illinois, Department of Forestry, called by plaintiff as an expert witness. There was no contention that Walters was not qualified, and defendant bases its claim of error on the ground that, in stating his opinion as to what could have been done to prevent shrinkage of the wooden separators between the sheets of flooring, the witness assumed facts not in evidence. From our examination of the evidence we conclude that defendant's argument is not supported by the record, and the trial court did not err in admitting the testimony.

Defendant contends next that misconduct of plaintiff's counsel was so prejudicial as to deprive it of a fair trial. It bases its argument on two occurrences during the section 60 examination of M. M. Anderson, who at the time of plaintiff's injury was defendant's vice president of engineering. We have examined the record and conclude that in the one instance, in admonishing plaintiff's counsel and explaining to the jury the basis for so doing, the trial court clearly removed any prejudice which could possibly have resulted. As to the other occurrence, in examining the witness concerning an exhibit, counsel made the statement

that two pages of a multipage exhibit were missing. Proper decorum would suggest that a question rather than a declaration was appropriate, but we note that neither this witness nor any other appears to have explained why two pages of the exhibit prepared by defendant, and which comprised the detailed drawings and specifications for bundling the flooring, were missing. We note, parenthetically, that we have examined the exhibit and the pages are still missing. Under the circumstances shown, the comment by plaintiff's counsel was not so prejudicial as to require reversal.

Defendant makes passing reference to improper closing argument relating to this incident but upon examination of the transcript we find no error.

Because of our holding that the appellate court erred, and that plaintiff's judgment must be reinstated, it becomes necessary to consider defendant's appeal from the judgment dismissing its counterclaim. (50 Ill.2d R. 318(a).) We note first, and hold, that the controversy must be decided under Indiana law. (*Ingersoll v. Klein*, 46 Ill.2d 42.) We have examined the Indiana authorities, many of which are collected and discussed in *McClish v. Niagara Machine and Tool Works* (S.D. Ind.), 266 F. Supp. 987. We conclude that under Indiana law there is no distinction between "active" and "passive" negligence (*Indiana Harbor Belt R. Co. v. Jones*, 220 Ind. 139, 41 N.E.2d 361), that, in the absence of an allegation of a contractual right to indemnity (*J. C. Penney Co. v. Westinghouse Electric Corp.* (7th Cir.), 351 F.2d 561), or a principal-agent relationship (*Holbrook v. Nolan*, 105 Ind. App. 75, 10 N.E.2d 744), defendant's counterclaim failed to state a cause of action for indemnity, and that the trial court did not err in dismissing it.

For the reasons set forth the judgment of the appellate court is reversed and both judgments of the circuit court of Cook County are affirmed.

*Appellate court reversed, circuit court affirmed.*