REINHARD GAENZELE, Plaintiff-Appellant, *v.* B. E. WALLACE PRODUCTS CORPORATION, Defendant-Appellee.

First District (2nd Division)  No. 60885

Opinion filed June 1, 1976.

Head, Purcell & Wardrope, Ltd., of Chicago (Sidney Z. Karasik, of counsel), for appellant.

Wildman, Harrold, Allen & Dixon, of Chicago (Richard C. Bartelt, James P. Dorr, and David W. Clark, of counsel), for appellee.

Mr. JUSTICE DOWNING delivered the opinion of the court:

Plaintiff, Reinhard Gaenzele, challenges the jury verdict and judgment for defendant in the circuit court of Cook County in this strict products liability case on grounds , that the trial court's refusal of tendered instructions and exclusion of certain evidence denied him a fair trial. No question is raised as to the sufficiency of the evidence or the trial court's judgment for plaintiff on defendant's affirmative defense of assumption of risk.

The issues presented for review are (i) whether the jury was adequately and accurately instructed and (ii) whether the trial court improperly excluded evidence such as to deprive plaintiff of a fair trial.

The record indicates plaintiff sustained injuries when a movable gantry, manufactured by defendant and sold to plaintiff's employer through a

distributor in 1966, collapsed on him at plaintiff's place of employment on November 20, 1969, while plaintiff was attempting to adjust the height of the gantry. The gantry is a movable hoisting device in the form of a carpenter's sawhorse, the top of which consists of an I-beam about 10 feet in length supported on each end by two tubular legs mounted on caster wheels. These legs are, on each side, connected by tubular crossmembers just above the caster wheel frames to form the main leg assemblies. Each leg has a lower section which, during adjustments of height, telescopes into and out of an upper section. To the bottom of the upper sections, spring-loaded bolts are attached by means of a collar which houses the bolts. Varied heights between 9 and 15 feet are secured by the insertion of the bolts into holes spaced at 6-inch intervals in the lower sections. The springs attached to the bolts and housed in the collars are intended to automatically reinsert the bolts into the holes of the lower sections as the legs telescope. Additional tubular supports are also affixed to the I-beam and culminate in attachments to the upper sections opposite the bolts on each leg. Suspended by a movable trolley from the I-beam is a block chain hoist which, by means of wheels within the trolley, can be rolled to any position along the I-beam.

At the time of the accident, plaintiff was attempting to adjust the gantry from a high position to move it under a doorway. Assuring himself the bolts were secure, he disengaged one of the bolts with his right hand. It is not clear whether he had, as in the past, held the upper section with his left hand, since plaintiff could not recall what he was doing with that hand. While disengaging the bolt, the lower section of the leg telescoped rapidly into the upper section, failing to reinsert into a lower hole, as a result of which the gantry collapsed. Plaintiff was struck by the block chain hoist thereby sustaining the injuries which are the subject of this suit.

Plaintiff had received no warnings or instructions on adjusting the height of the gantry beyond what appears on the gantry itself. On the legs of the gantry are attached labels which instruct the operator how to hold the bolt in a disengaged position by use of a cotter pin which plaintiff asserted he did not utilize. No other warnings or instructions appear on the gantry.

During a section 60 (Ill. Rev. Stat. 1973, ch. 110, par. 60) examination of Bernard E. Wallace, president of defendant, plaintiff's attorney inquired about a gantry jack kit which attaches to the lower section and takes the weight off of the upper section. This would, if functioning properly, prevent the leg from telescoping so rapidly and tipping over. Wallace admitted the kit was first produced by defendant in 1959, withdrawn in 1962, and produced again subsequent to the manufacture of the gantry in issue in 1966.

Plaintiff's attorney then asked if "any devices that could have been used as safety features" existed to prevent the leg from telescoping and the gantry from collapsing. The court sustained defendant's objection to this question on grounds that the witness was being asked to provide a remedy out of his general knowledge. The court remarked that this sounded more like a discovery question than questioning in pursuit of proof of facts at trial.

Turning to changes which had been made in the design of the main leg assembly since 1966, plaintiff's attorney asked whether any of these changes related to safety features. The court sustained defendant's objection based on its belief that plaintiff's attorney was, thereby, attempting to make Wallace into an expert witness without proper foundation.

Three of plaintiff's exhibits were subjected to exclusion or partial exclusion, which actions are raised as errors before this court. Plaintiff's exhibit 33 is a printed description of "Safety Features of the Wallace Adjustable Leg" published in February of 1973. Of the four "features" depicted, the trial court found only the last one—a Safety Stop Pin—to be relevant to the facts in this case. Placing this pin in the hole below the hole to be engaged during height adjustments prevents rapid telescoping past all the holes in the lower section, as apparently occurred in the present case. The three other safety features included the spring-loaded bolt itself, a safety notch to prevent the bolt from being pulled completely out of the gantry and a lock to prevent unauthorized tampering. The court admitted that portion of exhibit 33 insofar as it depicted the Safety Stop Pin and excluded the other three features as irrelevant. Plaintiff's exhibit 34 was excluded completely. Published in September of 1973, it consists of operation and safety instructions relating to proper caster wheel positioning, various methods used to support and adjust the gantry (including overhead supports such as cranes, tripods and forklifts), instructions on adjusting height by manipulation of legs and bolts (including use of Safety Stop Pins), and instructions on the use of safety cables and adjustment of caster frames. The court considered exhibit 34 to be "duplicitous" of exhibit 33 and to contain irrelevant material as well as warnings and instructions based on post-occurrence knowledge. He therefore refused to admit it. The court also refused to admit a leg assembly from a gantry with the new safety features depicted in exhibit 33 attached because it was cumulative and would do more harm than good. Plaintiff was allowed to examine Wallace as to the Safety Stop Pins which, Wallace admitted, should prevent the gantry from tipping over. Wallace testified that the pins were not available when the gantry at issue was manufactured nor at the time of the accident.

The remainder of the evidence presented is not relevant to the issues on

appeal since the sufficiency of the evidence to sustain the verdict and judgment is not challenged. At the instructions conference, several of plaintiff's instructions were refused. Plaintiff's burden of proof instruction was, however, given. Also given was plaintiff's instruction 24 stating plaintiff's theories upon which relief should be granted. At post-trial proceedings, the court stated it had prepared this instruction after finding two successively tendered issues instructions submitted by plaintiff unsatisfactory. Plaintiff did not object to this instruction.

## I.

The first issue plaintiff presents is whether the jury was adequately and accurately instructed as to the law applicable to the case. Plaintiff contends that error was committed in the refusal of most of his tendered instructions. His chief argument as to this issue, however, lies in his belief that the trial judge should have given the following three instructions:

Plaintiff's Instruction No. 9:

"The manufacturer of a product is liable for injury and damages proximately resulting from its reasonably foreseeable use if, at the time it left his control, there existed in the product a condition which rendered it unreasonably dangerous for such use. It is not a defense that the condition could not have been discovered by the manufacturer, or that all possible care was used in the manufacture of the product."

Plaintiff's Instruction No. 10:

"The manufacturer of a product has the duty to communicate warning of any condition of the product if such warning is reasonably necessary for the safe use of the product. The law does not say whether or what warning is reasonably necessary or how it should be communicated. That is for you to decide."

Plaintiff's Instruction No. 12:

"The manufacturer of a product has a duty to communicate instructions regarding the use of the product which he knows or should anticipate are reasonably necessary for the safe use of the product. The law does not say what instructions are reasonably necessary or how they should be communicated. That is for you to decide."

The instructions tendered by plaintiff derive from the Illinois Products Liability Manual published by the Illinois Institute for Continuing Legal Education inasmuch as no Illinois Pattern Instructions exist for products liability cases. By refusing to give the above three and other ancillary and elaborative instructions tendered by plaintiff, he contends, the court failed to adequately inform the jury of the *duty* of a manufacturer in a products liability case.

In determining whether the jury has been properly instructed, the instructions must be considered as a whole. (*Bittner v. Wheel Horse Products, Inc.* (1st Dist. 1975), 28 Ill. App. 3d 44, 52, 328 N.E.2d 160; *Hulke v. International Manufacturing Co.* (2d Dist. 1957), 14 Ill. App. 2d 5, 52, 142 N.E.2d 717.) No error is committed in refusing even instructions correctly stating the law where the instructions given do adequately instruct the jury. *Livings v. City of Chicago* (1st Dist. 1975), 26 Ill. App. 3d 850, 853, 326 N.E.2d 170; *Makas v. Pagone* (1st Dist. 1972), 6 Ill. App. 3d 532, 536, 285 N.E.2d 812; *Miceikis v. Field* (1st Dist. 1976), 37 Ill.App. 3d 763, 347 N.E.2d 321.

■■ The instructions given the jury included Plaintiff's Instruction No. 24, prepared by the court and accepted by the plaintiff. This instruction set forth four alternate theories of recovery based on plaintiff's claim he was injured by defendant's product which was unreasonably dangerous in being defectively designed in three methods, and due to defendant's failure to warn or instruct against dangerous uses. So far as we can determine, this instruction encompassed all of plaintiff's theories stated in his third amended complaint. Another instruction, stating the requirements of plaintiff's burden of proof, informed the jury that if they found any of the four theories in instruction 24 to be existent, plaintiff would have shown the first element of his case—an unreasonably dangerous condition. The combination of these two instructions adequately instructs the jury of the applicable law. It would have been needlessly repetitious to have given plaintiff's "duty" instructions as well. The same can be said for plaintiff's other ancillary and elaborative instructions which the court also refused.

Upon reviewing the amended complaint, the evidence and the instructions given, we find no error.

■■ Plaintiff also urges that the trial court erred in refusing to give an instruction defining the phrase "unreasonably dangerous." After oral argument before this court, he pointed out that the recent case *Becker v. Aquaslide 'N' Dive Corp.* (4th Dist. 1975), 35 Ill. App. 3d 479, 488-90, 341 N.E.2d 369 (one judge dissenting), supports his position because "* * * the concept of 'unreasonably dangerous' is neither generally understood by jurors nor within their common experience." On the other hand in *Pyatt v. Engel Equipment, Inc.* (3d Dist. 1974), 17 Ill. App. 3d 1070, 309 N.E.2d 225, *leave to appeal denied*, 56 Ill. 2d 591, the third district of this court concluded that it was not necessary to define "unreasonably dangerous." We believe in the principle that juries should not be over-instructed. On the other hand we must be satisfied that the jury was adequately instructed on the issues raised by the pleadings and evidence. As we have mentioned in our opinion, a review of all the instructions leads us to the conclusion that all the issues were fairly covered by the

instructions and that the trial court did not err in refusing to give such an instruction.

## II.

■■■ The second issue plaintiff raises in seeking relief is whether the trial court improperly excluded evidence so as to deprive plaintiff of a fair trial. The evidence excluded related to post-occurrence changes and developments which plaintiff argues he was entitled to have presented to the jury. He quite correctly cites *Sutkowski v. Universal Marion Corp.* (3d Dist. 1972), 5 Ill. App. 3d 313, 281 N.E.2d 749, which held post-occurrence changes in a product the subject of a strict liability suit to be admissible so long as the alternatives there evidenced are "feasible." (5 Ill. App. 3d 313, 319-20.) The trial court, in excluding the evidence plaintiff presented, did so for a number of valid reasons. Evidence of safety features in exhibit 33 was excluded as irrelevant to the issues in this case. Clearly it was not relevant what changes had been made on the gantry to prevent the bolt from coming completely out of the gantry or to deter unauthorized tampering, since neither of these contingencies were at all involved in this incident. It may have been needless to also exclude a depiction of the spring-loaded bolt itself, but in light of the other extensive evidence on the bolt which was admitted, such exclusion was surely harmless. Plaintiff's exhibit 34 was wholly excluded. Insofar as it was cumulative of exhibit 33, or "duplicitous" as the court put it, it was wholly discretionary to do so. (*Lake Shore & Michigan Southern R.R. Co. v. Brown* (1887), 123 Ill. 162, 14 N.E.197.) The remaining portions of exhibit 34 were properly excluded either because they were irrelevant or evidence of post-occurrence warnings and instructions rather than of post-occurrence changes in the product itself. The manufacturer is required to warn of dangerous propensities. (*Dunham v. Vaughan & Bushnell Mfg. Co.* (4th Dist. 1967), 86 Ill. App. 2d 315, 229 N.E.2d 684, *aff'd*, 42 Ill. 2d 339, 247 N.E.2d 401.) Nothing in the *Dunham* case indicates that any knowledge the manufacturer has beyond that possessed at the date of the occurrence is relevant to the question of *warnings*, although it may have relevance as to actual changes. Indeed, the warnings and instructions published in 1973 may well have been at least partially based on what occurred in this case. Admitting such evidence would only have confused the jury in determining what the manufacturer could have perceived as dangerous propensities in 1969. We therefore find it was properly excluded.

Plaintiff also cites the court's limitations on his examination of Wallace as error. In the first colloquy at issue, plaintiff's attorney asked Wallace whether he was aware of any devices which could be used as safety features. The trial court in sustaining an objection to this testimony, did so

on the theory that it is more properly a subject for discovery than for proof of facts at trial. We do not agree. However, when viewed against the total record, we find no prejudicial error.

■■■ The second colloquy was more specific and proper in seeking Wallace's statement on whether design changes which had been made on the main leg assembly were, in fact, safety features. The court sustained defendant's objection on grounds that plaintiff was thereby attempting to transform Wallace into an expert witness without proper foundation. Plaintiff on appeal seeks to have Wallace viewed as an expert based on the rule that a manufacturer is held to the knowledge of an expert. (*Lewis v. Stran Steel Corp.* (1974), 57 Ill. 2d 94, 311 N.E.2d 128; *Moren v. Samuel M. Langston Co.* (1st Dist. 1968), 96 Ill. App. 2d 133, 237 N.E.2d 759.) None of this is pertinent, however, since the colloquy did not ask for the opinion of an expert. Instead plaintiff sought a statement from the manufacturer of that product on the intent of a change made in a product. This was proper inquiry and should not have been excluded. However, in reviewing the record, we have determined that plaintiff was able to place before the jury a great deal of evidence regarding the post-occurrence changes made in the product. Our review of the entire record leads us to the conclusion that plaintiff received a fair trial, was able to adequately present to the jury its theory, and received fair instructions as to the law applicable to the pleadings and evidence. We find no prejudicial error.

For the reasons stated above, we affirm the judgment of the circuit court of Cook County.

Judgment affirmed.

STAMOS, P. J., and JIGANTI, J., concur.