CHARLES A. LAFF *et al.*, Plaintiffs-Appellees, *v.* CHAPMAN PERFORMANCE
PRODUCTS, INC., *et al.*, Defendants-Appellants.

First District (1st Division)　No. 77-851

Opinion filed July 31, 1978.

Morton C. Elden and Haas & Dienstag, Ltd., both of Chicago (Gary E. Dienstag and Adolph L. Haas, of counsel), for appellants.

Earle S. Rappaport, Jr., and Marvin Smollar, both of Chicago, for appellees.

Mr. JUSTICE McGLOON delivered the opinion of the court:

Plaintiffs, attorneys at law, filed a two-count amended complaint against defendants, Chapman Performance Products, Inc. (hereinafter

referred to as Chapman, Inc.), and Robert Chapman and David Arlasky, two officers of defendant corporation. Count I alleged that defendants owed plaintiffs $13,629.68 due on an account stated for legal services and out-of-pocket expenses. Count II alleged that defendants embarked on a plan to defraud plaintiffs and obtain legal services without intending to pay for them and sought $27,259.36 in punitive damages. Defendants answered denying the material allegations of the amended complaint. In addition, Chapman, Inc. filed a counterclaim in two counts. Count I alleged that plaintiffs agreed to handle the litigation in question for $6,000; that under plaintiffs' threat to withdraw as counsel, defendant corporation paid the plaintiffs $10,000; that in violation of their agreement, plaintiffs withdrew as counsel before completing their services; and that as a result defendant was entitled to a $10,000 refund of fees already paid. Count II of the counterclaim alleged that plaintiffs' actions were wilful and wanton and prayed for punitive damages. Plaintiffs answered the counterclaim admitting the receipt of $10,000 in fees but denied the remaining material allegations. The cause then proceeded to trial before a jury. During that trial, the trial court directed verdicts as to both count II of the amended complaint and count II of the counterclaim. The trial court also denied a motion by the plaintiffs pursuant to section 41 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 41) praying for costs as to count II of the counterclaim. Count I of the amended complaint and count I of the counterclaim were submitted to the jury which returned verdicts in favor of the plaintiffs on both counts. The jury returned a verdict against both the corporation and individual defendants on count I of the amended complaint in the amount of $20,629.68, $7,000 more than requested in the amended complaint. After granting plaintiffs leave to amend their *ad damnum* to $20,629.68, the trial court entered judgment on the jury verdict. Defendants now appeal from that judgment. Plaintiffs cross-appeal from the trial court's order denying their motion for costs as to count II of the counterclaim.

Defendants make the following contentions on appeal: (1) that the plaintiffs failed to sustain their burden of proof that the account rendered to the defendants was fair and reasonable; (2) that the trial court erred in failing to direct a verdict in favor of the individual defendants David Arlasky and Robert Chapman, and in failing to submit separate verdict forms as to these defendants; (3) that the jury's verdict in excess of the *ad damnum* was the result of the jury's passion and prejudice and warrants the granting of a new trial, or in the alternative, a remittitur; and (4) that the trial court erred in refusing to receive into evidence defendants' group exhibit no. 2 because said exhibit, defendants argue, denoted that much of the time spent by plaintiffs was unnecessary and unreasonable. Plaintiffs in their cross-appeal raise the sole contention that the trial court

abused its discretion in not awarding them costs as to count II of the counterclaim.

We affirm in part and reverse in part.

The instant lawsuit arose out of services performed by the plaintiffs in connection with three lawsuits concerning the ownership of the trademark Kar-Lok and patent rights for the use of the patent on a hood and ignition lock system manufactured and sold by the defendant, Chapman, Inc. On October 29, 1973, Chapman, Inc., filed a complaint in Federal court against Ramm Industries Co. (hereinafter referred to as Ramm) alleging patent infringement on a "Hood Locking Device." On March 20, 1974, Ramm filed a complaint in the same court naming as defendants Chapman, Inc., David F. Arlasky, Robert W. Chapman and Joyce E. Arlasky and alleged unfair competition and infringement of the trademark Kar-Lok. After initiating the trademark suit, Ramm mailed about 500 letters to Chapman's present and prospective customers threatening an infringement suit if they sold Chapman, Inc.'s product under the name Kar-Lok. Chapman, Inc.'s business immediately dropped by one-half.

Charles Laff, an attorney specializing in patent and trademark law and a member of the plaintiffs' law firm, testified that he first met in his offices with David Arlasky and Jay Frank, then counsel for Chapman, Inc., on March 29, 1974. They informed him of the trademark and patent cases and asked Laff to represent the defendants in the trademark case and to take over representation in the patent case. Laff agreed to represent the defendants in both cases. According to Laff, Arlasky wanted immediate action to prevent Ramm from mailing further letters to Chapman, Inc.'s customers and wanted to establish Chapman, Inc.'s exclusive ownership of the name Kar-Lok. Laff also testified that he told Arlasky that his firm charged fees on an hourly basis. Laff's time was billed at $60 per hour and the others in the firm scaled down to $25 per hour. Laff also informed Arlasky that clients were billed for out-of-pocket expenses. Laff told Arlasky it would be difficult to estimate the amount of fees but that the cost per month could go as high as $10,000. Laff testified that he also informed Arlasky that the average patent suit cost $50,000 to try and a trademark suit could cost as much. Received into evidence at trial were yellow and blue index cards indicating the services performed by each attorney, the amount of time expended in performing these services, and plaintiffs' out-of-pocket expenses. The yellow cards reflected that plaintiffs had expended a total of 606.83 hours working on the cases.

During the course of their work relating to the patent and trademark cases, plaintiffs sent defendants periodic invoices billing them for legal services and out-of-pocket expenses. A total of nine invoices were sent defendants covering the period March 24, 1974, to May 14, 1975. Each

invoice provided a detailed description of plaintiffs' work, itemized the charges and disbursements made by plaintiffs, and credited amounts already paid. The final invoice reflected that defendants had paid plaintiffs a total of $10,000 and still owed $13,629.68.

Approximately one month after receiving the second invoice dated June 20, 1975, Arlasky sent plaintiffs a letter requesting an itemized accounting of plaintiffs' hours and the charge per hour. Laff testified that he telephoned Arlasky, invited him to plaintiffs' offices to check their billing records, and that Arlasky never attempted to make such an examination.

Laff also testified concerning the legal services plaintiffs performed for defendants. Laff initiated his work by studying extensive files provided by Arlasky pertaining to the patent case and a previous, related case, *Chapman v. Producers Sales*. Laff then prepared indemnity agreements for Chapman to send to its customers who had received Ramm's threatening letter. In April of 1974, Laff, with assistance from other attorneys in plaintiffs' firm, prepared and filed an answer and counterclaim in the trademark lawsuit and a motion for a preliminary injunction, together with supporting affidavits and a memorandum of legal authorities. Laff appeared in court on three separate occasions for hearings on this motion. Pursuant to the motion, an order was entered enjoining Ramm from further disseminating information to the trade concerning the lawsuit and requiring Ramm to furnish Chapman, Inc., with a list of persons who had received a copy of Ramm's threatening letter. In addition, Laff studied the contract and other documents under which defendants claim title to the trademark Kar-Lok, conducted interviews with Chapman, Inc.'s customers and their attorneys regarding the problems Ramm had created with its threatening letters, and added as third party defendants to the trademark case Charles Barcik and Major Motor Supply Company. It was from Barcik that Ramm claimed its title to the name Kar-Lok. Plaintiffs also prepared and filed a request for production of documents and appeared in court and filed a legal memorandum successfully opposing Ramm's motion to delay discovery.

On April 26, 29 and 30, and on June 5 Laff took the deposition of Joseph J. Gagliardo, president of Ramm Industries. Laff testified that Mr. Gagliardo's testimony was especially important because as president of Ramm he was principally responsible for Ramm's activities and also because he was claiming the rights to the name Kar-Lok under both a written assignment from Barcik and an alleged oral assignment from Louis Guenther, who at one time was Barcik's partner and who was deceased. It was this same Louis Guenther from whom defendants claimed to have obtained their rights to use the name Kar-Lok.

In early May of 1974, Laff also took the deposition of Charles Barcik,

counterdefendant in the trademark suit, and later attended depositions of Arlasky and Robert Chapman. Each of these depositions took one half of a day.

In April, Laff also prepared a motion to dismiss the complaint and quash service of process as to the individual defendant Robert Chapman. Accompanying the motion were affidavits and a memorandum in support of the motion.

Plaintiffs also began preparing answers to interrogatories served on defendants by Barcik, a counterdefendant in the trademark case. In connection with the patent case, plaintiffs analyzed the patent involved, the prior art, Ramm's allegedly infringing device, and prepared answers to interrogatories served by Ramm.

During May, plaintiffs also conducted legal research regarding the purported oral assignment of the name Kar-Lok to Ramm. Laff also took part in successful settlement negotiations with the lawyers for the Estate of Louis Guenther pertaining to the earlier mentioned state court proceedings. From this settlement, defendants obtained an assignment of all of Louis Guenther's estate's rights to the name Kar-Lok, and the Federal registration thereof.

On June 7, 1974, another hearing was held in connection with the motion for a preliminary injunction. Laff worked with Jay Frank and Arlasky until 11:30 p.m. the evening of June 6, 1974, in preparation for this hearing. The hearing took the entire day and after testimony of witnesses and oral argument, Ramm gave its assurance to the court that it would not use the name Kar-Lok and that it had no intention of proceeding against defendants' customers for their purchase or sale of Kar-Lok devices. After the above hearing, Laff prepared a letter to be sent to Chapman's customers informing them of the above assurances of Ramm. After appearing in court several times to obtain approval of this letter, Laff sent the letter to Chapman, Inc.'s present and prospective customers. Laff went on to testify that during July, plaintiffs conferred with opposing counsel concerning discovery in the trademark case and performed extensive legal research concerning title to the name Kar-Lok and further objections by Ramm to the preliminary injunction. Laff also indicated that in August he was in frequent contact with one of Chapman, Inc.'s major customers in New York and further prepared and filed a legal memorandum in response to a memorandum by Ramm seeking to dissolve the preliminary injunction.

On September 20, Laff again appeared in court for a further decision on the preliminary injunction. An order was entered reaffirming the earlier order of April 17 which restrained Ramm from sending out further notices to Chapman's customers regarding the lawsuit and authorized Chapman to contact persons who had received Ramm's letter that they

would not be sued for the purchase or sale of Chapman's Kar-Lok device.

From October 1974 to May 1975 the bulk of plaintiffs' work consisted of planning future steps to be taken in the two cases and conferring with the defendants regarding the status of their cases. Plaintiffs also studied possible infringement of defendants' patent by others besides Ramm. In April 1975, plaintiffs prepared and filed answers to a second set of interrogatories served on defendants by counterdefendant Barcik.

Laff went on to testify that during the month of August he spoke with Arlasky twice about the large outstanding balance owed to plaintiffs. Arlasky indicated that defendants' business had slowed down and asked to pay the outstanding balance due in installments. In the same month Robert Chapman told Laff that if he had problems with Arlasky concerning payment that Laff should contact Chapman. During a later conversation, Chapman told Laff that defendants were expecting a large sum of money within a week and would pay the entire outstanding amount at that time. However, after two payments of $1,000 each in August, no further payments from defendants were received until February 1975, when another payment of $1,000 was made.

Shortly after an invoice dated October 1, 1974, was mailed to defendants, Laff telephoned Arlasky about the outstanding balance of $13,278.22 then owed by defendants. Laff explained that defendants could wait for Ramm to make the next move in the trademark suit since the preliminary injunction against Ramm was in force. Laff also explained that other than the hiring of an expert witness, they were in good shape for trial in the patent case. Arlasky replied that he would like Laff to go slow due to the large sum of money owed plaintiffs.

On January 30, 1975, Laff met with Jay Frank and Arlasky. Laff testified that he informed Frank and Arlasky that certain interrogatories had to be answered and expressed concern over defendants' failure to make any payments toward fees. Laff prepared an estimate of additional fees that would be required and a schedule of installment payments. Laff also asked Arlasky if he would consent to Laff's withdrawal from the cases and Arlasky indicated he wanted plaintiffs to remain. Arlasky did agree that if the schedule of payments was not met that Laff could withdraw.

In the first week of May 1975, Laff telephoned Arlasky, informed him that defendants had not kept the payment schedule, and asked for defendants' consent to withdraw as counsel. Arlasky said he would immediately pay $5,000 and Laff did not present his motions to withdraw. However, without Laff's knowledge, his motions to withdraw in both the trademark and patent cases previously sent to defendants for their signatures, were presented to the court by Arlasky and an attorney, David Lincoln Ader. As a result, Ader replaced Laff as counsel in both cases. Plaintiffs never received any further payments from defendants after

Laff's last telephone conversation with Arlasky and his removal from the cases.

Defendant David Arlasky testified that he met Mr. Laff at a meeting with Jay Frank in March of 1974 during which they discussed the trademark case. Arlasky met with Laff again in early April of 1974 and they discussed fees for the first time. Laff indicated that he would consolidate the patent and trademark cases, that there would be a quick ruling, and that the total fee would be $6,000. Laff requested a retainer of $3,000 which Arlasky paid. Laff never indicated that his fees would be on an hourly basis or that he would bring other people to court with him. Arlasky never knew he would be billed for cab fares, copying, postage and other expenses.

Arlasky also testified that Laff continuously phoned requesting money. Arlasky responded that business was bad and told Laff to hurry and bring the cases to a close. Beginning in June of 1974, Laff made representations to Arlasky that the cases would be over shortly.

Arlasky further testified that after he received a statement in July of 1974 he spoke to Laff and asked him why it was so high. Laff replied that the cases involved more time than expected. When Arlasky responded "that wasn't our agreement" and indicated that Chapman could not afford such fees, Laff said he would allow installment payments over a long period of time. Laff also threatened to withdraw if payment was not made.

Arlasky wrote a letter to Laff in June objecting to the high fees and asked to see the time records. According to Arlasky's testimony, Laff said that it would be impossible to see the time records because he did not want to divulge his clients.

Arlasky again discussed fees with Laff in January of 1975. Arlasky had already paid $9,000 and indicated that he was discouraged about the progress of the cases. Laff stated that it would take a little bit longer to complete the cases, but that he would go no further unless he was paid.

Arlasky also indicated that after Ramm's threatening letter, Chapman, Inc.'s monthly sales dropped from $100,000 to below $50,000. After Laff sent the letter to Chapman, Inc.'s customers sales did not rise. Laff never raised the theory of dismissing the trademark case due to the fact that the trademark was descriptive.

Defendant Robert Chapman testified that he and Arlasky met with Laff in April of 1974 to discuss retaining Laff in the patent and trademark cases. At this meeting Laff mentioned nothing about expenses.

Plaintiffs called as an expert witness, Sidney Neuman, a senior partner in the patent, trademark and copyright law firm of Neuman, Williams, Anderson and Olsen. Mr. Neuman testified that in 1974 hourly rates of $60 for an attorney admitted to the bar for sixteen years and $25 for an

attorney admitted to the bar for one year were reasonable; that legal fees to defend a trademark suit could easily amount to $50,000 and that fees and costs involved in patent litigation are even more expensive. Mr. Neuman also testified that after having reviewed the pleadings in the trademark case it was his opinion that a defense that the trademark Kar-Lok was descriptive was an inappropriate defense because both Ramm and Chapman, Inc., claimed the named Kar-Lok as a significant and distinctive indication of the source of the origin of the locking devices produced by them. Mr. Neuman indicated that if the trademark were held to be descriptive, Chapman, Inc.'s claim to exclusive ownership would be defeated.

Plaintiffs also called as a witness Jay Frank, general counsel for Chapman, Inc., in 1974 and 1975. Mr. Frank testified that he was present at a meeting in 1974 during which the lawsuits were discussed and an arrangement as to fees made. At that meeting Mr. Laff stated that his fees would be $60 per hour and requested a retainer of $1,500 for each suit. Mr. Frank testified that he was not aware of any discussion concerning setting the Federal cases for trial.

The defense called as a witness Keith Kulie, an attorney specializing in patent and trademark law. Mr. Kulie testified that he had been handling the patent litigation for Chapman, Inc., until Mr. Laff was substituted as attorney. Kulie advised Laff that Chapman, Inc., was having financial problems and that Laff should get his fee "up front." Mr. Kulie also indicated that he would have considered very seriously the defense that the trademark was merely descriptive.

■ ■ ■ Defendants first argue that plaintiffs, having proceeded under the theory of an account stated, failed to sustain their burden of alleging and proving the fairness and reasonableness of the account rendered. In an action by an attorney for fees mere allegations of an account stated are insufficient to allege liability of the client and the burden is always on the attorney to show that any agreement he has made with a client is fair and reasonable. (*Blum & Sang v. Kurtzon* (1953), 351 Ill. App. 107, 113 N.E.2d 475 (abstract); *Woods v. First National Bank* (1942), 314 Ill. App. 340, 41 N.E.2d 235.) Moreover, an attorney must show that compensation does not exceed fair and just remuneration for the services which have been rendered and which the attorney had a duty to render. (*Hopkinson v. Jones* (1888), 28 Ill. App. 409.) It is well established that when an attorney files an action to recover fees under the theory of account stated, the attorney has the burden of furnishing detailed facts and computations upon which the claimed fee was predicated (*Hamilton v. Grady* (1942), 314 Ill. App. 568, 41 N.E.2d 968 (abstract)), and the client is always permitted to prove that the charges are excessive, not warranted by custom and usage, and otherwise unreasonable. (*Henry v. Le Moyne*

(1920), 219 Ill. App. 313; *Blum & Sang v. Kurtzon* (1953), 351 Ill. App. 107, 113 N.E.2d 475 (abstract).) Among the factors to be considered in determining the reasonable value of an attorney's services are the following:

> "\* \* \* the skill and standing of the attorney employed; the nature of the cause and the novelty and difficulty of the questions at issue; the amount and importance of the subject matter; the degree of responsibility involved in the management of the cause; the time and labor required; the usual and customary charge in the community; and the benefits resulting to the client. [Citations.]" *Neville v. Davinroy* (1976), 41 Ill. App. 3d 706, 711, 355 N.E.2d 86, 90.

■■ Defendants argue that plaintiffs failed to prove the necessary elements to establish that their charges were fair, reasonable and equitable. We disagree. The record is replete with evidence of Mr. Laff's skill and experience as an attorney. Laff himself testified as follows concerning his credentials: that he has a Bachelor of Science degree in Chemical Engineering from Purdue University and a law degree from Harvard Law School; that he is a member of the bars of Illinois and Florida and is licensed to practice in numerous Federal and State courts; and that he has been practicing patent, trademark and copyright law for 18 years, is a senior partner in the patent firm of Laff, Whitesel and Rockman and an instructor in patent, trademark and copyright law at Loyola University School of Law in Chicago. In addition, Mr. Sidney Neuman testified concerning Laff's good standing and reputation as an attorney. Mr. Neuman also testified as to the reasonableness of plaintiffs' hourly rates, the fact that it was not unusual to charge out-of-pocket expenses and the fact that it was common to have associates assist more experienced attorneys working on a case.

Also presented at trial was extensive testimony concerning the nature of the controversies in the patent and trademark cases. Furthermore, Laff described in detail the work plaintiffs performed each month during their representation of defendants and the legal fees charged for each month's work. Also received into evidence were nine invoices which provided an itemized description of the legal services rendered during the period covered by the invoice and an itemized accounting of all charges, including out-of-pocket disbursements. The time records for the various attorneys from plaintiffs' firm who worked on defendants' two cases were also admitted into evidence. The time cards for each attorney provided a breakdown of all the time each attorney spent on defendants' cases and a brief description of the work performed.

The instant record is further replete with evidence regarding the importance of these two cases. Both Arlasky and Chapman testified that

after Ramm sent its threatening letter regarding the trademark lawsuit to Chapman, Inc.'s customers, business immediately dropped by one-half. The above represented a substantial loss of revenue in that Chapman, Inc.'s sales of Kar-Lok products totaled approximately 2½ million dollars for August of 1969 to April 1974 when Ramm initiated its lawsuit.

Arlasky also admitted at trial that defendants had gone to great expenses in developing the trademark Kar-Lok and that, since the preliminary injunction obtained by plaintiffs, defendants have continued to sell their products under the name Kar-Lok exclusively and are currently selling such products with gross sales in excess of one million dollars per year.

■■ Defendants however claim that plaintiffs failed to prove that the legal services were necessary. They contend that there was no evidence presented to establish that the expenditure of 606.83 hours was reasonable, necessary or customary. Defendants argue that time alone is only one factor to be considered in determining the fairness and reasonableness of an attorney's fee. (See Annot., 57 A.L.R.3d 475 (1974).) While we agree that the actual time spent is only one factor to be considered in determining the reasonableness of the fee, we believe the plaintiffs presented sufficient evidence to justify the hours spent and the resulting fee. The invoices and time cards from which the invoices were prepared listed in detail the services performed and expenses billed. Laff described in detail the work done. Also, defendants were allowed to present evidence toward showing the services were unnecessary. They cross-examined witnesses on the question of whether the litigation could have been dismissed due to Kar-Lok being merely descriptive. Laff countered this testimony with his own testimony that Arlasky told him Chapman, Inc., wanted exclusive rights to the trademark and that a defense that the trademark was merely descriptive would have been counterproductive because it would have denied the defendants the exclusive use of the trademark. Plaintiffs presented sufficient evidence to show that the hours spent were necessary and the amount billed was fair and reasonable. The resolution of this question was properly for the jury.

Defendants next contend that the trial court erred in instructing the jury concerning an account stated. Defendants specifically object to the trial court's giving to the jury plaintiffs' instruction no. 6. Noting that plaintiffs' instruction no. 6 was to be read in conjunction with another instruction concerning the burden of proof, defendants argue that the two instructions read together amounted to a peremptory instruction to the jury to find for plaintiffs if they determined an account stated existed. Defendants further argue that plaintiffs' instruction no. 6 effectively

removed from the jury's consideration the question of the reasonableness of plaintiffs' fee.

■■ We first conclude that plaintiffs' instruction no. 6 when read in conjunction with the burden of proof instruction does not amount to a peremptory instruction. Quoting from Black's Law Dictionary, we held in *Martin v. Kralis Poultry Co.* (1973), 12 Ill. App. 3d 453, 297 N.E.2d 610, that a peremptory instruction is one "* * * given by a court to a jury, which the latter must obey implicitly, as an instruction to return a verdict for the defendant, or for the plaintiff, as the case may be." (12 Ill. App. 3d 453, 466-67, 297 N.E.2d 610, 620.) Without quoting verbatim or at length from the burden of proof instruction, we note merely that that instruction, in pertinent part, concluded instructing the jury first, that if they found plaintiffs had proved certain propositions their verdict should be for plaintiffs on the complaint, and second, that if the jury found that any of those propositions had not been proved their verdict should be for defendants as to plaintiffs' complaint. Because the jury could find for the defendants if they found plaintiffs had not proved any one of the propositions in the instruction, the instruction was not peremptory. See *Martin v. Kralis Poultry Co.* (1973), 12 Ill. App. 3d 453, 297 N.E.2d 610; *Nagel v. Village of East Hazelcrest* (1952), 347 Ill. App. 338, 106 N.E.2d 838.

We also reject defendants' contention that the question of the reasonableness of the fees was removed from the jury's consideration. The trial court provided the jury with three separate instructions concerning account stated. The first instruction, tendered by the defendants, defined the term account stated and explained the elements necessary to constitute a meeting of the minds of the parties. The second instruction, tendered by the plaintiffs, informed the jury that part payment, a promise to pay or an acknowledgement of the account by the debtor is *prima facie* evidence of the existence of the account between the parties. The final instruction, the trial court's own instruction, informed the jury that when an attorney contracts with his client, he bears the burden of showing the utmost good faith and complete disclosure on his part and the full understanding of all the facts and their legal consequences on the client's part as well as demonstrable fairness of the agreement reached.

■■ It is well settled that instructions should be read in a series. (*Gaenzele v. B. E. Wallace Products Corp.* (1976), 39 Ill. App. 3d 93, 350 N.E.2d 571.) A consideration of the above instructions read together reveals that the jury was properly instructed concerning the reasonableness of plaintiffs' fee.

■■ Defendants also contend that the jury's verdict was the result of

passion and prejudice and warrants the granting of a new trial or in the alternative, a remittitur. Defendants note that plaintiffs' complaint sought recovery on an account stated and alleged $13,629.68 due and owing on that account. They further note that the jury's verdict assessed damages "in the sum of $7,000 and $13,629.68 plaintiffs' claim. Total = $20,629.68." The trial court entered judgment in the amount of $20,629.68. In support of this judgment plaintiffs argue that the account stated between plaintiffs and defendants was not conclusive as to the amount owed plaintiffs and that such amount was subject to increase or decrease depending upon the jury's determination of the reasonable value of those services. In support of the above contention plaintiffs rely heavily on the case of *Reardon v. Clover* (1898), 81 Ill. App. 526. However, *Reardon* is distinguishable from the instant situation. In *Reardon* there was a conflict of evidence concerning whether the attorneys' services were performed under a special contract for a fixed price. The court in *Reardon* ruled that whether there existed a special contract was a question for the jury and that, in the absence of a special contract, the jury's verdict in excess of the *ad damnum* was supported by the evidence. In the instant situation, unlike that in *Reardon*, plaintiffs alleged a special contract as to the amount of compensation and are not entitled to any amount above the amount alleged due under the account stated. Defendants correctly contend that where a client and his attorney enter into an express contract for compensation, the express contract will control the compensation due the attorney and *quantum meruit* principles are not involved. (*Neville v. Davinroy* (1976), 41 Ill. App. 3d 706, 355 N.E.2d 86; *Barnes v. Barnes* (1922), 225 Ill. App. 68; *Elliott v. Rubel* (1890), 132 Ill. 9, 23 N.E. 400.) Clearly, when an express contract exists, a resort to *quantum meruit* principles is unnecessary because the attorney and client have already agreed on the value of the services. We conclude a remittitur should be granted.

■■ Defendants further suggest, however, that the jury's verdict is the result of passion and prejudice and contend that they are entitled to a new trial. While the jury's verdict, "damages in the sum of $7,000 and $13,629.68 on plaintiffs' claim," leaves us somewhat nonplussed, we do not believe it indicates such passion and prejudice so as to entitle defendants to a new trial. Defendants point out that in support of the request for punitive damages in count II of the amended complaint, plaintiffs introduced into evidence defendants' debts, judgments against them, and testimony as to the personal financial condition of Arlasky and Chapman. Defendants argue that such evidence prejudiced the jury and resulted in the inflated damages awarded plaintiffs. What defendants neglect to point out is that they never objected to any of the above evidence nor requested an instruction to disregard such evidence after the trial court granted a

directed verdict in their favor as to the amended count II. Having failed to object to evidence they contend is prejudicial and having failed to request an instruction to disregard such evidence, defendants cannot complain that the verdict is the result of passion and prejudice. Based upon the evidence presented at trial and the jury's verdict, there is no doubt that the jury felt that plaintiffs had proved an account stated in the amount requested and that the hours expended and fees billed were reasonable, customary and necessary. This conclusion is supported by the record.

For the foregoing reasons plaintiffs are entitled to the $13,629.68 alleged due and owing in their complaint, but not more than that amount. We therefore, pursuant to the power given us under Supreme Court Rule 366(a)(5) (Ill. Rev. Stat. 1977, ch. 110A, par. 366(a)(5)) grant a remittitur of $7,000 and affirm the judgment to the extent of $13,629.68.

■■ Plaintiffs raise an additional argument that defendants are precluded on appeal from objecting to the amount of the jury's verdict because they did not raise this specific issue in their post-trial motion. We believe this argument is utterly without merit. In their answer to plaintiffs' motion to amend the *ad damnum* in the complaint from $13,629.68 to $20,629.68 defendants argued that there was no evidence presented at trial that would justify an increase in the *ad damnum* and that the jury's verdict of $20,629.68 was without evidentiary foundation. Defendants also filed a motion for a remittitur alleging that there was no evidence presented showing damages in excess of $13,629.68 and that counsel for plaintiffs in his closing argument requested damages of only $13,629.68. Considering the above, we conclude that defendants properly preserved for review the issue of excessive damages.

■■ Defendants next contend that the trial court erred in failing to direct a verdict for the individual defendants, David Arlasky and Robert Chapman. Arlasky and Chapman are not individually liable merely because of their status as officers of the corporate defendant. (*Polivka v. Worth Dairy Inc.* (1974), 26 Ill. App. 3d 961, 328 N.E.2d 350.) The individual liability of a corporate officer purporting to act for a corporation is no different than that of any other agent. (*Korman v. Wanen Catalpa Apartments, Inc.* (1959), 20 Ill. App. 2d 598, 156 N.E.2d 621 (abstract).) When an agent contracts for goods or services on behalf of a disclosed principal he is not personally liable (*Fieschko v. Herlich* (1961), 32 Ill. App. 2d 280, 177 N.E.2d 376) and a party suing both agent and principal assumes the burden of proving joint liability. *Gieseke v. Hardware Dealers Mutual Fire Insurance Co.* (1963), 46 Ill. App. 2d 131, 195 N.E.2d 32.

After reviewing the evidence presented in the instant case, we conclude that plaintiffs have not met their burden of proving individual liability on

the part of Arlasky and Chapman. It is clear from the record that the litigation plaintiffs were retained to pursue involved the question of the ownership of Kar-Lok. Plaintiffs realized that both Arlasky and Chapman made no individual claim for ownership of Kar-Lok. Rather, it was evidence that only Chapman, Inc., claimed such ownership right. Defendants point out in their brief that plaintiffs filed a motion for preliminary injunction solely on behalf of Chapman, Inc.; that most of plaintiffs' services were performed in connection with the counterclaim and motion; that all other motions and pleadings in the trademark case were made solely on behalf of Chapman, Inc., except for a motion to quash service of summons on behalf of defendant Robert Chapman which was never ruled upon; that the patent litigation clearly involved Chapman, Inc., only; and that none of the pleadings involved defendants Arlasky and Chapman individually. Although Chapman and Arlasky were both named as defendants on the trademark suit, virtually all the services in the suit for which plaintiffs seek compensation were performed for the benefit of the corporation.

It is also clear from the record that plaintiffs knew defendants had contracted with them on behalf of Chapman, Inc. Plaintiffs' first two statements were directed solely to Chapman, Inc. In objecting to the latter statement, Arlasky wrote a letter on the letterhead of Chapman, Inc., and signed as general manager of Chapman, Inc. It was not until the statement of July 15, 1974, after receipt of the above letter and when previous statements were unpaid, that plaintiffs added Arlasky and Chapman personally to the statements.

Furthermore, plaintiffs' own ledger reflects the account in the name of "Chapman Performance Products, Inc." The time cards introduced by plaintiffs and expenses disbursement cards reflect the name of the client as "Chapman Performance Products, Inc." or "Chapman Performance."

■■ Considering all of the above evidence, we would conclude that plaintiffs have not sustained their burden of proving joint liability and we reverse the judgment of the trial court as to the individual defendants.

Defendants' final contention of error concerns the trial court's decision refusing to receive into evidence their group exhibit no. 2, a two-page notification from the U.S. Patent and Trademark Office. The first page of the exhibit indicates that the trademark Kar-Lok was cancelled because an affidavit tended to show that the registered trademark was not filed within the required time period pursuant to section 8(a) of the Trademark Act (15 U.S.C. §1058(a) (1970)). This cancellation occurred after Laff was discharged by the defendants.

The second document pertains to an entirely different matter in the Patent and Trademark Office and is not related in any way to the first document. The second page of the document purports to be a copy of an

"Office Action" issued by the Patent and Trademark Office in apparent response to a trademark application apparently filed by Chapman Performance Products, Inc., Serial No. 082,634. It shows that Chapman's application was initially refused on six grounds, one of which being that the trademark was merely descriptive. It was not a final refusal and in no way related to cancellation of any trademark registration. There was no indication whether a response was made to the "Office Action."

A trial court's decision regarding the admissibility of evidence should be reversed only when the court's discretion has been clearly abused. (*Young v. Gateway Transportation Co.* (1975), 26 Ill. App. 3d 864, 326 N.E.2d 222.) A trial court properly rejects evidence when such evidence in the trial court's discretion is of little probative value or incompetent to prove a matter in issue. (*Dinschel v. United States Gypsum Co.* (1967), 83 Ill. App. 2d 466, 228 N.E.2d 106.) Defendants argue that the exhibit was relevant to the issue of plaintiffs' fees. We disagree. Nowhere in the record is there testimony that defendants desired plaintiffs to have the trademark suit dismissed on the grounds that the trademark was merely descriptive. In fact Laff testified that defendants wanted the exclusive use of the trademark Kar-Lok. The record further contains ample evidence of the value of the exclusive use of the trademark, a use the plaintiffs would not have had if Kar-Lok were deemed merely descriptive. We see no abuse of the trial court's discretion in refusing to receive into evidence the above documents.

We next consider plaintiffs' cross-appeal from the trial court's order denying plaintiffs' motion for costs filed pursuant to section 12 of "An Act * * * in relation to costs" (Ill. Rev. Stat. 1975, ch. 33, par. 12) and motion for attorney's fees filed pursuant to section 41 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 41). The costs and fees requested in the above motions were those allegedly sustained in defending the counterclaim. Both a motion for costs and a motion for attorney's fees are addressed to the sound discretion of the trial court. (See Ill. Rev. Stat. 1975, ch. 33, par. 12; *Horween v. Dubner* (1965), 68 Ill. App. 2d 309, 216 N.E.2d 288.) Expenses and attorney's fees under section 41 of the Civil Practice Act should be awarded when the pleader's allegations are found to be untrue and made in bad faith without reasonable cause. *Village of Evergreen Park v. Spangler* (1976), 40 Ill. App. 3d 947, 353 N.E.2d 257.

Count I of the counterclaim alleged basically that plaintiffs agreed to represent defendants in both the patent and trademark cases for a total fee of $6,000 and that plaintiffs breached this agreement forcing defendants to pay in excess of $6,000 under duress resulting from plaintiffs' continued threats to withdraw as counsel. Count II of the counterclaim alleged that plaintiffs' conduct alleged in count I was malicious, wilful, and wanton; that plaintiffs' sole interest in representing

defendants was to extract funds from defendants; and that defendants received no benefits from plaintiffs' legal services. Count II prayed for punitive damages.

In arguing that the allegations in the counterclaim were untrue and made in bad faith without reasonable cause, plaintiffs note that when the first invoice for $10,572.63 in expenses and fees was sent to defendants, Arlasky sent plaintiffs a letter requesting an itemization and never mentioned any agreement for $6,000. Plaintiffs also presented evidence that in the past defendants had filed similar counterclaims against attorneys suing them for fees. Plaintiffs also argue that defendants presented no evidence to show that they acted under duress in making payments to plaintiffs or tending to show that they could not have terminated their relationship with the defendants. They further cite the testimony of both Arlasky and Chapman that they both met with Laff when the alleged agreement of $6,000 was reached and contrast this to defendants' answer to a previous interrogatory that only Arlasky and Laff were present at this meeting.

Plaintiffs further argue that defendants admitted receiving substantial benefits from plaintiffs' services. They point to Arlasky's testimony that he stated in an affidavit filed in the U.S. District Court that since the preliminary injunction defendants have continued to sell their products under the trademark Kar-Lok exclusively and have current gross sales in excess of one million dollars per year and that defendants have not had effective assistance of counsel since plaintiffs' withdrawal.

■■ Although we find plaintiffs' argument as to fees and costs somewhat persuasive, after a review of the evidence, we find no abuse of discretion in the trial court's decision denying fees and costs. Plaintiffs clearly testified that an agreement for $6,000 existed and their acquiescence in statement of accounts does not clearly establish that they knew no agreement for $6,000 existed. Plaintiffs also testified that Laff constantly threatened to withdraw as attorney if bills were not paid. The fact that the jury rejected these allegations does not establish that they were made without reasonable cause. (*Theodorou v. Community Builders, Inc.* (1972), 6 Ill. App. 3d 277, 285 N.E.2d 474.) We conclude that the trial court within its discretion properly denied plaintiffs' motions for costs and fees.

For the foregoing reasons, we grant a remittitur of $7,000 and affirm the judgment against the corporate defendant to the extent of $13,629.68; we reverse the judgment as to the individual defendants; and affirm the order of the trial court denying costs and fees.

Judgment affirmed in part, reversed in part.

GOLDBERG, P. J., and O'CONNOR, J., concur.