LEE A. COPALMAN *et al.*, Plaintiffs-Appellees, v. THOMAS R. FRAW-LEY *et al.*, Defendants-Appellants.

First District (4th Division)   No. 1—88—1585

Opinion filed April 20, 1989.

James A. Blazina, Chartered, of Chicago (Nancy Tordai O'Shaughnessy and James A. Blazina, of counsel), for appellants.

Wolin & Rosen, Ltd., of Chicago (Harold Rosen and Michael E. Pildes, of counsel), for appellees.

JUSTICE LINN delivered the opinion of the court:

Plaintiffs, Lee and Sheila Copalman, filed a mortgage foreclosure action against defendants Thomas and Mildred Frawley and others. The Frawleys admitted liability as to principal and interest accruing after the default but contested the amount of costs and attorney fees that the Copalmans claimed. On October 7, 1986, four months after the default, the Frawleys tendered a cashier's check "in satisfaction" of the principal and interest then due. Because the parties could not resolve the dispute over attorney fees, the Copalmans filed suit for the recovery of fees, costs and additional interest. After a trial on those issues, the court awarded the Copalmans an amount that included $5,000 in attorney fees and $3,622.32 in interest due on the principal balance. The Frawleys appeal, contending that the court's award of interest is erroneous because their tender of the cashier's check stopped accrual of further interest; that the award of attorney fees is excessive; and that the trial court's order barring certain evidence involving another matter is reversible error.

We affirm the trial court.

## BACKGROUND

The Copalmans loaned money to the Frawleys and Richard Brandstatter, taking back second mortgages secured by notes on three properties in Northbrook, Illinois. The total amount of the mortgages, dated June 20, 1985, was $25,000.

The closing on the properties took place in June 1985 and pay-

ment on the mortgages was due on June 20, 1986. No payment was made on that date.

In July 1986, the Copalmans' attorney Michael Pildes, wrote defendants a letter concerning the default.

In August 1986 Pildes spoke with an attorney from the office of James A. Blazina, Chtd., who represented the defendants. On August 5, 1986, Peter Ross from Blazina's office wrote a letter asking Pildes to take no further action until Frawley could discuss the matter with Copalman. On August 11 Frawley admitted to Copalman that he owed the $25,000 principal plus interest and that he wanted to resolve the matter without the attorneys because they had a personality clash. He told Copalman that the funds for payment of the principal and interest were readily available. Frawley said he did not want to go through Pildes, however.

On August 15, 1986, James Blazina, Frawley's attorney, told Pildes that Frawley would pay the principal and interest due but that Frawley preferred discussing the matter directly with Copalman. He suggested that Pildes give Frawley and Copalman time to reach a compromise.

On August 18 Pildes spoke with his clients and they decided that if payment was not forthcoming in a short time, Pildes would go ahead and prepare and file a mortgage foreclosure action.

On August 22, Frawley telephoned Copalman. Copalman told him that Pildes did not feel that he should proceed without legal representation. According to Frawley, however, Copalman said that he would advise Pildes to do nothing. In a letter dated August 26, 1986, Frawley advised Copalman that he had instructed his attorneys to prepare all of the paperwork to document the principal and interest payments and the mortgage releases needed from Copalman. He further requested a copy of all documents that Copalman had recorded on the properties. However, he did not tender the undisputed principal and interest that was due.

On August 27, 1987, Pildes recorded the second mortgages because they had not been recorded at the time of the closing. A day later he prepared a complaint to foreclose the mortgage, which was filed September 2, 1986. He did not place the complaint for service with the sheriff until September 16. Pildes sent a payoff letter to Blazina's law firm, which reflected a total due of $28,047.36 due for principal, interest, attorney fees, and costs.

After receiving no response by the end of the month, Pildes prepared letters to the tenants of the mortgaged property regarding the assignments of rents that the Frawleys had given to the Copalmans

as part of the mortgage documents. He personally delivered the notices to the tenants to instruct them to pay rent to the Copalmans through his law firm. Some of the tenants subsequently told Pildes that they had been instructed by the realty company managing the property to submit the checks to it instead. The realty company's president and director was James Blazina and a vice-president of the company was Thomas Frawley. According to Pildes, one of the realty company's agents told him that Blazina personally instructed the agent to tell the tenants to submit the rent checks to the realty company.

The parties and attorneys had additional discussions in October 1986. Blazina sent the Copalmans settlement and release documents on behalf of the Frawleys without notice to Pildes. The Copalmans submitted the documents to Pildes' firm for review. A short time later, the Copalmans received a cashier's check for the principal and interest due, with the words "payment in satisfaction" of the mortgages. Blazina's firm did not notify Pildes' of this check, either.

Pildes sent Blazina a letter dated October 15, 1986, regarding the document and check and objecting to Blazina's conduct. Shortly thereafter another attorney, Allen Castator, took over defendants' representation and he and Pildes started another series of settlement discussions that began at the end of October and continued into November. Believing that all issues were finally settled, the Copalmans' attorney prepared and sent the paperwork, including stipulations to dismiss, releases of mortgage and the settlement agreement, which the Copalmans had signed. Defendants did not execute the documents, however, and refused to go through with the settlement. Castator asked for itemizations of certain costs but did not tell Pildes that defendants were not going to sign.

Thereafter, the Copalmans proceeded to litigation, noticing a motion of default, summary judgment and judgment of foreclosure because defendants had not answered the complaint. In a subsequent pretrial ruling, the court allowed the cashier's check to be deposited without prejudice to rights of either party, but no settlement was reached. Accordingly, the parties took discovery and proceeded to trial.

After hearing all of the evidence, the trial court entered judgment in favor of the Copalmans, allowing them to recover interest and certain costs and attorney fees.

OPINION

Defendants do not dispute that as of June 20, 1986, they were in-

debted to the Copalmans for the full amount of principal and interest due under the mortgage instruments and notes that they executed on June 20, 1985. Defendants also admit their subsequent default and their repeated representations that they would pay the amounts owed. Apparently, defendants had the necessary funds at all times but declined to pay the notes or cure their default thereunder for other reasons.

The testimony and exhibits produced at trial indicate that the Copalmans' attorney, Michael Pildes, sent a demand letter after the defendants defaulted on the notes; that the defendants never denied their liability (or ability) to pay the principal and interest owed; that the Frawleys and their attorney, Blazina, did not want to deal with Pildes; and that various settlement negotiations fell through. The record also shows that defendants' cashier's check for the amount of principal and interest due as of the date of the check was to be "in satisfaction" of the mortgage indebtedness.

## I

On appeal, defendants argue that they intended the language on the check to mean "in *partial* satisfaction," without prejudice to the rights of the parties to resolve remaining disputed items such as court costs and attorney fees. Hence, the interest should have stopped accruing on the date of the tender, October 13, rather than the day in March 1987 that the court allowed the check to be deposited without prejudice.

We are not persuaded by defendants' position on appeal. In fact, the Frawleys' attorney had sent a letter with the check explaining that the release documents sent with the check would "fully satisfy and release" the obligations under the mortgage and notes. Moreover, at the time the Frawleys sent the check they were disputing the Copalmans' attorney's right to fees, although the notes clearly provided for fees and court costs to be awarded if legal action was necessary to collect the notes. Finally, the Frawleys and their attorney, Blazina, attempted to deal directly with the Copalmans and refused to send copies of the documents and check to Pildes' firm or acknowledge his representation.

The tender of principal and interest due generally stops further accrual of interest (*Pinkstaff v. Pennsylvania R.R. Co.* (1964), 31 Ill. 2d 518, 202 N.E.2d 512). The real issue the trial court faced, however, was whether defendants actually intended their tender to be in partial satisfaction of their liabilities or whether the Copalmans, in cashing the check, risked the complete discharge of the mortgage in-

debtedness, including costs and fees. After hearing the evidence and judging the witnesses' credibility, the trial court determined that "Copalman could not accept Frawley's check without being in serious jeopardy of waiving all of his rights under the note and mortgages in question. \*\*\* The words ["payment in satisfaction"] mean, in my opinion, payment in discharge of the second mortgage obligations; or, to put it another way, payment in discharge of the obligations to pay the principal, the interest, the attorney's fees and the costs." The court concluded that it therefore would be unreasonable to stop the running of the interest as of October 13, 1986, the day of the ineffective tender. Instead the court found that interest should be awarded through March 5, 1987, the date on which the court allowed the check to be deposited without prejudice to the rights of the parties.

We do not find that the trial court abused its discretion or misinterpreted the pertinent law. (See *Pinkstaff v. Pennsylvania R.R. Co.* (1964), 31 Ill. 2d 518, 526, 202 N.E.2d 512, 516 (tender of less than full amount of judgment and interest in full satisfaction of the judgment, interest, and costs could not be treated as a partial payment "[i]n the light of the conditions attached").) Nor do we believe that its determination is against the manifest weight of the evidence. Although defendants argued that they tendered the cashier's check in October in accordance with a settlement reached with Copalman, the evidence supports the trial court's finding that Copalman had not agreed with the supposed settlement because items of costs and fees remained in dispute. There was no dispute at that time as to the principal and interest owed. Nevertheless, the words typed on the check made it possible—if not probable—that cashing the check would result in a complete satisfaction and discharge of all outstanding liability on the mortgage indebtedness, the costs and attorney fees.

■ Either side could have sought an earlier order of court regarding the treatment of the tender as partial satisfaction without prejudice to the remaining items in dispute. Since the defendants were the ones in default on their obligation, and since they did not seek a court order that would have stopped further accrual of interest upon deposit of the check, they cannot be heard to complain that it is unfair that they pay the additional interest that accrued. The additional interest is part of the Copalmans' damages.

Defendants' citation of cases from other jurisdictions does not persuade us that their tender was unconditional and effective as a partial payment. They and their attorney were the ones who caused the confusion over the legal significance of the tender by including the "in satisfaction" language on the check and by stating in Blazina's

letter that the documents he prepared would fully satisfy the indebtedness. Although the Frawleys purported to indemnify the Copalmans for $1,000 in attorney fees, they did so as part of their attempt to block Pildes' representation of the Copalmans. They did not settle the matter in October when they could have done so for an additional $1,000 in attorney fees. They did not settle after their new attorney and Pildes worked out an agreement in November 1986, which required from them an additional $1,657.63 over the amount tendered. Instead, they went to trial and ended up owing an additional sum in excess of $6,000, plus their own attorney fees.

The facts of this case distinguish it from those in which an unconditional tender of principal and interest results in the cessation of further interest. Accordingly, we affirm the trial court's ruling on this issue.

## II

Defendants next challenge the attorney fee award of $5,000 and costs of $286 as unreasonable and excessive. James Blazina, who had represented defendants, testified as an expert that the actions Pildes took were unreasonable and unnecessary. Defendants cite several instances in which they believe it was unnecessary for Pildes to perform certain services, such as personally delivering tenant notices and assignments of rent.

■ On the issue of fees the trial court acknowledged that the burden was on the Copalmans to prove that the fees were reasonable and necessary. (*E.g., Laff v. Chapman Performance Products, Inc.* (1978), 63 Ill. App. 3d 297, 379 N.E.2d 773; *In re Estate of Healy* (1985), 137 Ill. App. 3d 406, 484 N.E.2d 890.) The court did in fact disallow approximately 11 or 12 hours after going through each item and deciding, for example, that Pildes should not be compensated for personally delivering the assignments of rents to tenants. The court reduced the 3½ hours claimed for preparing the mortgage foreclosure complaint by two hours. The court held that 28 hours for the trial of the case, heard over three days, plus the pretrial preparation and depositions, was reasonable. Using the rate or $100 per hour, the court allowed a total of 58 hours, for a total of $5,800. The court then further reduced the award down to $5,000. The court also cut the claimed costs by almost $200.

■ We find no basis of record to reverse the trial court's carefully considered award. As the court noted, "In the usual cases, a fee of [$5,800] for a mortgage foreclosure on a $25,000 mortgage would be wholly unreasonable. However, this case is not typical. Here Fraw-

ley and his attorney let their dislike and disrespect for Pildes seriously cloud their judgment. Their refusal to acknowledge Pildes' role as [the] Copalmans' lawyer in large part [is] the cause of the size of these fees. I regret to say that Frawley and his lawyer have provided justification which otherwise would not exist."

We agree with the trial court.

### III

Defendants next argue that the trial court erred in refusing to allow testimony regarding an automobile accident which involved James Blazina, their attorney, and a client of Pildes. According to them, this unrelated legal matter is relevant because it explains the personal animosity between Blazina and Pildes. Such animosity allegedly caused Pildes to perform unnecessary legal work and block a settlement agreement between Frawley and Copalman.

The record reveals that defendants' attorney referred to this other matter in opening statement and that the Copalmans' attorney objected and made an oral motion to bar the introduction of evidence relating to the automobile accident as irrelevant. The trial court sustained the objection, stating that the "question of whether the attorney's fees are necessary to the foreclosure would depend on what was done regardless of the motives for why they were done."

On appeal, defendants assert that the court thus improperly refused to let them introduce evidence of the attorneys' personal animosity, yet held at the end of trial that the reason that the award was so high was directly related to Frawley and his attorney's animosity toward Pildes. Without citation of authority, defendants ask us to reverse the judgment, apparently arguing that they were not given a chance to present their side of the matter.

■ As an evidentiary ruling, the trial court's decision was not an abuse of discretion. Testimony regarding an entirely separate legal matter would not ordinarily have any place in a lawsuit simply to show some animosity that had developed between the attorneys. (See 31A C.J.S. *Evidence* §178, at 454 (1964) (evidence of a person's motive is inadmissible where the legal significance of his conduct is not affected by such matter).) Moreover, it is obvious from the exhibits and other matters of record that the court was made aware of the reasons why Blazina harbored resentment toward Pildes. Defendants did not make an offer of proof as to the particulars of the evidence that they would have presented, but the gist of the matter involved Pildes' representation of a woman who had struck Blazina's automobile with hers. The estimated damage to Blazina's car was $186 but

Pildes supposedly told his client to offer only $75. Letters in the record indicate that this became a sore spot with Blazina. Blazina supposedly told Pildes that Blazina personally instructed the Frawleys not to pay the Copalmans' mortgages, despite their ability to do so, as a way to force Pildes' other client to pay Blazina's damages in the automobile case. A letter from Blazina states that the charge is "untrue."

We do not understand how Blazina's ability to present evidence regarding the automobile damages claim could help his case in any way. He does not so inform us in his brief. Even assuming its relevance to the attorney fee issue in this case, the *reason* for the lawyers' animosity and the *results* of the animosity are separate matters. In the pending case the trial court had to determine whether the fees and costs claimed were reasonably related to the work required for the mortgage foreclosure. The trial court heard the evidence and concluded from it that defendants were attempting to cut Pildes completely out of the case. They openly admitted as much. From the beginning they stated their desire to deal with the Copalmans only. Whether their reason for this was to save money, settle quickly, or just because their attorney did not like Pildes, the fact remains that they could have avoided the whole issue of fees and costs by simply paying the principal and interest when due or shortly thereafter. The Copalmans were not required to forego the services of their attorney of choice simply because the Frawleys did not want to pay his fees. Defendants' liability for costs and fees did not arise until they failed to cure their default, despite several opportunities to do so. They prolonged the matter and delayed payment at their own risk. If, as the court found, Blazina's animosity toward Pildes affected his judgment in advising the Frawleys, we fail to see how the reasons for the animosity make a difference. Accordingly, we reject the contention that the trial court committed reversible error in precluding further exploration of the automobile collision case.

## IV

■ As a final matter, the Copalmans move for additional attorney fees to be awarded on appeal, on the ground that the appeal is "frivolous." They cite no case authority but presumably refer to section 2—611 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—611). In addition, they point to certain instances of allegedly false statements in the defendants' brief.

We decline to award fees pursuant to section 2—611, which requires a factual finding in support that must be made in the trial

court, and we need not address the allegedly false statements in the brief. We believe, however, that the Copalmans are entitled to fees on appeal pursuant to the mortgage notes, which provided the basis for the fee award at trial. Since defending the trial court's judgment on appeal is part of the fees and expenses attendant to collecting the notes, we remand this cause for further proceedings limited to a determination of the Copalmans' reasonable additional costs and fees resulting from this appeal.

For the foregoing reasons, we affirm the trial court and remand for further proceedings.

Affirmed and remanded.

JIGANTI, P.J., and McMORROW, J., concur.